ANNA M. PHILLIPS and WILLIAM H. PHILLIPS, Executors of Hannah R. Weldin, deceased,

*vs.*

SARAH LOUISA PHILLIPS, PHOEBE ANNA MOUSLEY, CHARLES WESLEY WELDIN, ANNA M. WELDIN, SARAH R. WELDIN, FRANK GOODMAN, HORACE GOODMAN, GEORGE R. WELDIN, SAMUEL J. WELDIN, WILLIAM M. WELDIN, SARAH V. McCLEES, HANNAH I. BROOMALL, WILLIAM ROBINSON WELDIN, and THE TRUSTEES OF THE MOUNT PLEASANT METHODIST EPISCOPAL CHURCH.

*New Castle, June* 29, 1914.

26 *Del. Laws, c.* 89, regulating religious corporations, repeals prior statutes inconsistent with it.

The validity of a will must be determined by the law in force at the time of the death of the testator.

26 *Del. Laws, c.* 89, §4, provides that the trustees of religious corporations shall have power to purchase, receive, hold, and enjoy real property for the use of the congregation, their ministers or members, or for schools, almshouses, or burying grounds. Section 11, which immediately follows a section applicable wholly to the Episcopal Church, provides that all gifts or grants to any "such" corporation of any real estate or money, or security to be laid out in real estate, shall be by deed, duly delivered and recorded, at least one year before the death of the grantor. *Held,* that in view of preceding statutes, which for over one hundred years had prohibited religious corporations from taking real property by devise, section 11 must be held to apply to all religious corporations, and not only

to those referred to in the preceding section, and hence a religious corporation cannot accept a devise of land, or a bequest of money to be laid out in land.

Act March 1, 1855, §2 (*Rev. Code*, 1852, amended to 1893, *p.* 313 [11 *Del. Laws*, *c.* 275]), declaring that no grant, conveyance, devise, or lease of any real estate dedicated or appropriated to purposes of religious worship shall vest any right in the grantee, unless such grant shall be to a corporation organized under *Rev. Code* 1852, amended to 1893, *p.* 310, *c.* 39, §10, has no application to a bequest of money to be laid out in land, the interest of which is to be applied to the maintenance of a religious corporation.

The primary consideration in construing a will is to ascertain the testator's intent.

In construing a will, an intention to do what is illegal is not presumed; and if two constructions are possible, that will be adopted which is consistent with the law.

That interpretation of a will which will give effect to all terms, provided it is consistent with the general intent, will be adopted.

A construction of a will which will avoid intestacy should be favored.

If the meaning of a testator's language is clear, and the general purpose of a gift is unmistakable, the courts cannot change the gift by construction, so as to avoid its illegality.

Where a testator bequeathed a sum of money to a church to be invested in real estate and the interest to be applied on the salary of the minister, the bequest is one to be laid out in land, and hence is void; for, while the term "interest" usually means compensation paid for the use of money, there is no technical meaning which will prevent it being considered synonymous with the income from real estate or rent, that being the obvious meaning given it by the testator, and consequently the bequest cannot be held one authorizing the beneficiary to lend the money upon land as security.

A testator is considered to have died intestate as to an invalid bequest.

Where the residuary clause was invalid, both the bequests made by that clause and other invalid bequests pass to the next of kin of the testator.

BILL OF INTERPLEADER AND FOR INSTRUCTIONS TO EXECUTORS. Hannah R. Weldin by will dated April 7, 1906, and a codicil dated February, 1911, both probated shortly after her death, which occurred August 28, 1911, made the following gifts:

"Twenty-third. I hereby give and bequeath for the benefit of Mt. Pleasant Methodist E. Church, near Bellevue, Del., the sum of one thousand dollars, the money to be paid to the trustees of said church, to be invested in real estate, and the interest to be applied yearly toward the salary of the minister in charge, except five dollars of the interest, which I wish to go toward helping keep, yearly, the cemetery mowed, and the wall in repair.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

"In said will I have given the reversions (if any) of my money to 'the Women's Home Missionary Society,' I hereby revoke that gift to said society, and give the reversions to the Trustees of Mt. Pleasant Church, near Bellevue, Del., to be invested in real estate, and the interest to be applied to help keep said church and parsonage in repair."

The testatrix owned no real estate at the time of her death, and her estate consisted entirely of personal property. On December 11, 1852, the congregation of Mt. Pleasant Methodist Episcopal Church was duly incorporated under *Chapter 39 of the Revised Code* by the election of trustees and the certification by them of a corporate name, "The Trustees of Mount Pleasant Methodist Episcopal Church," which certificate was duly recorded.

Having administered the estate and paid all the legacies except those above mentioned, and being uncertain as to the proper interpretation of the will, the executors, in view thereof and of the conflicting claims as to the validity of the gifts, filed a bill for instructions, making as defendants the legatees and those who would be distributees of the personal estate of the testatrix in case she had died intestate.

The sections of the statute which affect the validity of the gift are *Sections* 4 *and* 11 *of Chapter* 89, *Volume* 26, *Laws of Delaware*, approved March 14, 1911, viz.:

"Sec. 4. The trustees so elected and their successors shall be a corporation, by the name so adopted and certified; shall have perpetual succession with all the incidents and franchises of a corporation aggregate, and with power to purchase, receive, hold, mortgage and enjoy property, real and personal for the use of the said society or congregation, their ministers or members, or for schools, almshouses or burying grounds. The act of a majority of the trustees shall be valid.

"Sec. 11. But all gifts, or grants, to any such corporation, of any real estate, or of money, securities or other thing of value, to be laid out

in real estate, shall be by deed duly executed, delivered, acknowledged and recorded at least one year before the death of the donor or grantor, to take effect presently for the use of the corporation, and without any power of revocation, trust, condition, or limitation whatever, or the same shall be void, unless such grant shall be really and bona fide for a full and valuable consideration actually paid, without fraud, or collusion, before executing such deed."

The case was heard on bill and answers.

*George Lodge*, for the church.
*Frank L. Speakman*, for next of kin of testatrix.

THE CHANCELLOR. The question raised by the bill is whether the gifts to the church were prohibited by the statute of Delaware and so void. Here the legatee is a religious corporation incorporated under a statute applicable specially and solely to societies and congregations of Christians. The present statute controlling this case was passed in 1911, but the portion of it specially applicable here is part of the ancient statute enacted in 1787. It was part of the statute which regulated and controlled both the character and amount of property which churches could acquire and the purposes for which the property could be acquired and used. A brief mention of the earlier statutes is desirable.

Among the statutes published in the earliest compilation of the laws of and relating to the State of Delaware was the *Act* 17 *George II, c.* 8. See *Hall's Digest, Revised Code of* 1829, *pp.* 457, 458. This Act authorized religious societies of Protestants to purchase or take by gift land for burying grounds and erecting churches, houses of religious worship, schools and almshouses, but prohibited them from purchasing, or taking by gift, land for the maintenance or support of the churches, houses of worship, schools or almshouses, or any other purpose. In short, such a corporation could either buy, or receive by gift, land for burial grounds, or for erecting churches, schools and almshouses, but for no other purpose. In 1787, an Act was passed by the General Assembly of Delaware to provide a method for the incoration of religious societies.

See *Hall's Digest, Revised Code of* 1829, *p.* 459. It provided for the election of trustees by the congregation and the certification of a name, and the corporation was thereby created. The corporation was authorized to purchase and take land for the use of the congregation. But all gifts and grants of land, or moneys "to be laid out and disposed of" in the purchase of land were rendered void, unless made by deed at least twelve months before the death of the grantor, or unless for full consideration paid without collusion. The Act of 1787 was construed in 1835 in the case of *Ferguson v. Hedges*, 1 *Harr.* 524, where the court held invalid a direct devise of land to St. Andrew's Church generally, and in the case of *State v. Wiltbank*, 2 *Harr.* 18, where there was a gift to a religious society by will of the proceeds of the sale of land to be applied towards educating poor children of members of the church, and the gift was considered as though it were a devise of land and held to be invalid under the Act of 1787.

Neither of the above acts seem to have been directly and expressly repealed. But section 14 of the Act of 1787 declared that the prior *Act* 17 *George II, c.* 8, was repealed so far as it was altered or amended by the later Act of 1787. It would seem clear that after 1787 the enabling provisions of the earlier statute were repealed. A statute which invalidated a general devise of land to a religious corporation certainly altered and amended a prior statute which allowed such a society to take land by devise for certain designated purposes. In discussing these early statutes the court in *State v. Wiltbank, supra,* does not seem to have expressed themselves on this point, and it was not necessary in that case to do so, for they held that the gift there considered was invalid even under the words used in the statute of George. It is certainly true, however, that as a result of the later statute the power to take by gift land, or money to be laid out in land, was entirely taken away from such corporations. Even a gift for the erection of a church was made invalid thereby. The purpose of the gift, or the use to be made of the thing given, did not affect the question as to its validity.

But in the *Revised Code of* 1852 there was substituted for them a new Act combining some of the features of each. See

*Revised Code*, *c*. 39 *p*. 105.   This chapter was continued in the later publications and was variously amended from time to time, but has as yet received no judicial construction on the point here involved.   By an Act approved March 14, 1911, the chapter concerning religious societies was affected by striking out of it all the sections thereof then in force and inserting in lieu thereof a new statute.   See *Delaware Laws*, *vol.* 26, *c*. 89, *p*. 189.   Some of the sections are re-enactments of the existing law, some sections are changed, and some sections are new ones not in prior statutes.   It is safe to say, then, that all prior statutes inconsistent with it are repealed by this Act of 1911.   It follows, then, that as the testatrix whose will is under consideration died after the passage of the Act of 1911, the validity of the provisions of her will are governed by that Act.

After providing the old method of incorporating congregations of Christians, the Act of 1911 empowered the corporation to purchase and hold property, real and personal, for the use of the congregation, their ministers or members, or for schools, almshouses or burying grounds.   See section 4.   Then follow several sections as to the election of trustees, duties of officers and the like.   By Section 10, the rector, wardens and vestrymen of any Protestant Episcopal Church on certifying their name or style could be constituted a corporation, with the franchises, rights and powers vested by the Act in trustees of other religious societies.   Then follows section 11, which is quoted above.

Judging from the context immediately preceding section 11, it is possible to hold that it refers to corporations described in section 10, for the words "such corporation" might be given this very narrow construction.   If so, then it does not apply to the gift under consideration, which was not to an incorporation of a congregation of the Protestant Episcopal Church.   This question did not arise, and could not have arisen, in the earlier cases in Delaware above referred to, for the Act of 1787 was differently arranged as to its subject matter.   Section 11 of the Act of 1911, above quoted, is in substance like section 3 of the Act of 1787.   By section 2 of the Act of 1787 a

religious corporation so created was given power to take and hold property, real and personal, for the use of its congregation. Then follows section 3: "Provided always, nevertheless," with the prohibition of a gift of land, or money to be laid out in land, except by deed. This prohibition applied to all religious corporations created under the Act. No separate provision was made in that earlier Act for incorporating congregations of the Protestant Episcopal Church. This was added later and appears in the revision of 1852 and in subsequent revisions of the statutes. It is clearly a construction too narrow to hold that section 11 of the Act of 1911 applies only to the corporations of the particular religious body referred to in the immediately preceding section. Both from the history and spirit of the legislation it superseded, and the evident purpose of the Act, section 11 applies to all corporations incorporated under it, including the one named in the will under consideration in this case. In legal effect it is as though section 11 of the Act of 1911 followed section 4 of that Act.

It is clear that section 2 of the Act of March 1, 1855 (see *Revised Code, p.* 313), does not apply to the will of Hannah R. Weldin. It was not a gift of real estate to be dedicated or appropriated to purposes of religious worship, but was a gift of money for the purchase of land to be held as an income producing investment, the income to be used to pay the salary of the minister and in keeping in order and repair a cemetery, church and parsonage. Under other circumstances it might be a pertinent question to be determined whether section 2 of the Act of 1855 repealed *Section* 10 *of Chapter* 39 *of the Revised Code of* 1839, *page* 310. The word "unless" in the Act of 1855 may mean that a gift by devise, or otherwise, to a religious corporation, created under *Chapter* 39 *of the Revised Code,* of land dedicated or appropriated, or to be dedicated or appropriated, for purposes of public worship was made valid, though theretofore invalid. In this connection it may be held that even if this be true, the re-enactment in the Act of 1911 of *Section* 10 *of Chapter* 39 *of the Revised Code of* 1852 reinstated the prohibition, and to that extent repealed section 2 of the Act of 1855. On these subjects no opinion is expressed.

In comparing the earlier with the present statute this difference is noted. The former invalidates gifts "of and for any sum or sums or money, goods, chattels, stocks in any public funds, securities for money, or any other personal estate to be laid out or disposed of in the purchase of any lands, tenements, rents or other hereditaments," while the latter affected gifts "of money, securities, or other thing of value to be laid out in real estate." This, however, is not important. The former has not been construed, and there is little or no real difference between the two. A gift of money to be laid out in real estate means the same thing as a gift of money to be laid out or disposed of in the purchase of real estate.

The question to be decided here is really a narrow one. There are two gifts of money to a corporation created and existing under a law, which in respect to the crucial language was the same when the corporation was created as when the will was made and the testator died. Both gifts are of money "to be invested in real estate," and the "interest" applied for certain designated purposes. Is a devise of money to a religious corporation to be invested in real estate, and the interest applied to certain designated uses of the corporation, invalid under section 11 of the above quoted Act?

On one side it is asserted that it is clearly within the prohibition of the Act. On the side of the church it is urged that the language of the will is at least consistent with meaning an investment not by the acquisition of real estate, but by taking it as security for a loan to be made on it, and that the use of the word "interest," which is applicable not to income from land but from the use of money, shows that ownership of land was not contemplated by the testatrix. It was also urged that the language should be construed to mean "to be invested *on* real estate."

The primary consideration in construing a will is to ascertain the intention of the testator, and if the law invalidates a gift made in words with that meaning a court must declare in accordance with the law. There can be no fair doubt that the testatrix intended that land should be bought with the money she gave to the chruch. When one buys productive

land, an investment is made in real estate. The testatrix intended that the purchase should be of real estate likely to yield an income by its being rented, or otherwise used to produce revenue. The absence of a forfeiture of the gift, or a gift of it otherwise on failure to invest in real estate, is quite important in ascertaining the purpose of the testatrix in using the language in the will. The obligation to purchase land with the money is imperative. So the use of the word "interest" is not controlling. Primarily "interest" means the compensation paid for the use of the money, or the penalty for delays in the payment of a debt, and is not aptly used in describing the income from real estate. There is, however, no such technical meaning to be given to the word "interest" as shall peremptorily prevent its being considered synonymous with income from real estate, or even rent. Both interest and rent are incidents resulting from the use of property. A variation of meaning in describing the incident should not operate to control the principal thing to which the incident relates.

In construing a will, an intention to do what is illegal is not presumed, and if there be two constructions, the one consistent with, and the other repugnant to, the law, the former will be adopted. So also an interpretation will be adopted as will give effect to every word of the will, provided the effect be consistent with the general intent of the whole will. So also intestacy is to be avoided as to the whole will and every gift in it. But it is also true that if the meaning of the language used is clear, and the general purpose of the gift is unmistakable, that construction must be adopted even if the law renders the gift so construed illegal, and even if some particular words relating to incidents of the gift are not given their primary meaning and even if intestacy in whole or part results.

Having found a natural and reasonable meaning for the words actually used by the testatrix, it is easy to resist the importunity of counsel to substitute other words for those used in the will, and the words "to be invested in real estate" will not be changed to read "to be invested *on* real estate." It being clear, then, that the testatrix intended the money given to the church to be laid out in real estate, the whole gift

is invalid by force of the statute which declares void a legacy of money to be laid out in real estate, even though in adopting this conclusion the word "interest" is not thereby given its primary meaning, but another one which is quite reasonable, and even though a partial intestacy will arise from the adoption of such interpretation. The court is not at liberty to modify the strictness of the statute, or thwart its evident purpose and application, by adopting a construction different from that clearly shown by the language used.

Both gifts, viz., the gift of a sum of money contained in the twenty-third paragraph of the will and of the residue in the codicil, are within the prohibition of the statute and invalid. Being void gifts, the subject matter is to be disposed of as though the testatrix died intestate as to it.

In *Ferguson v. Hedges*, 1 *Harr*. 524, a void devise was held to go to the residuary devisee because the subject of it was not validly disposed of by the testator, while in the case of *State, use of Derrickson v. Walter*, 2 *Harr*. 151, a void bequest of the proceeds of sale of lands was held to go to the heirs at law of the testator. In *Hearn v. Cannon*, 4 *Houst.* 20, 15 *Am. Rep.* 701 (Court of Errors and Appeals, 1869), there was a devise of all the testator's real estate to three persons, one of whom was dead at the date of the will, and there was no other or residuary devise of his real estate. The court considered the devise to be void as to an undivided third of the real estate, and that this share did not pass to the other two devisees, but descended to the heirs at law of the testator as land of which he died intestate. Under these decisions the legacy of one thousand dollars being void would have passed under the residuary clause; but as the residuary bequest is also void, both gifts go to the next of kin of the testatrix as distributees of the balance of her personal estate as though she had died intestate.