James S. Grant and Wilmington Trust Company, a corporation existing under the laws of the State of Delaware, Executors of the last Will and Testament of William McMonagle, late of Wilmington Hundred, deceased,

*vs.*

Anna Duncan Mullen, Francis Duncan, William Duncan and James S. Grant.

*New Castle, May* 12, 1926.

*William S. Hilles*, for complainant.

*Robert H. Richards*, for James S. Grant in his individual capacity.

*James H. Hughes,* Jr., for Anna Duncan Mullen.

THE CHANCELLOR. A bequest of personal property for life with no gift over is an absolute bequest. *Williams, Adm'x., v. Floyd, Adm'r.*, 12 *Del. Ch.* 256, 112 *A.* 377; *Derickson v. Garden*, 5 *Del. Ch.* 323; *State, to Use of Savin v. Savin*, reported in note to *State, to Use of Pepper, v. Warrington*, 4 *Har.* 55.

This principle operates to give to William McMonagle an absolute interest in the personal property bequeathed to him by Rose McMonagle. The authority given to him as executor in the last paragraph of Rose McMonagle's will to invest and reinvest the personal estate is, to be sure, superfluous if an absolute interest had been given before. But this circumstance cannot have the effect of reducing the absolute interest to one for life. *In re Estate of Rogers*, 245 *Pa.* 206, 91 *A.* 351, *L. R. A.* 1917A, 168. To allow it to work such a result would not only be contrary to the general rule, but would also be in clear defiance of the expressed wish that the legatee could do with the property "as he pleases." The request that the legatee make a will before his death and bequeath certain small sums to two sisters and a niece is merely precatory. It creates no trust. Instead of arguing that such a request indicates a lack of intention to give an absolute interest, as is contended, it appears to me to have the opposite effect.

As to the personal property therefore which William McMonagle received as his sister's legatee, it went to him absolutely and passes under his will. All the authorities cited by the solicitor for Anna Duncan Mullen are cases where a remainder was limited after the life estate. They are therefore not in point.

As to the real estate, the solicitor for the residuary devisee named in the will of William McMonagle contends that the same passes under the residuary clause as the property in fee simple of William McMonagle devised to him by his sister, or, if not, then it goes to the residuary devisee by virtue and in execution of the power conferred upon William by his sister to make a will and dispose of the same. The solicitor for Anna Duncan Mullen contests both of these positions.

First, then, did William McMonagle receive from his sister a fee simple interest in her real estate? The devise to him appears in the residuary clause of his sister's will. That clause is as follows:

"All the rest, residue and remainder of my property I give, bequeath and devise unto my brother William McMonagle, for and during the term of his natural life, to do with as he pleases and my request of him is that he before his death make a will and dispose of the same hereby asking him to make the following bequests," etc.

In the last clause of the will full power and authority are given William McMonagle as executor to sell all the real estate, to invest and reinvest all the personal estate, and to make deeds to purchasers without liability for the application, non-application, or misapplication of the purchase money. Notwithstanding that the first part of this devise refers to an estate for life, yet the subsequent language undoubtedly confers as great a right of disposition as an absolute gift in fee simple would carry. The devisee can do with the estate as he pleases. He is requested to execute a will and dispose of it. But this is not made mandatory. Disposition of the estate by way of a will being optional with him, it cannot be inferred that a last will and testament was the exclusive method intended by the testatrix to be employed by William in doing with the estate as he pleased. I cannot understand the phrase "to do with as he pleases" in any sense other than to indicate an intention that William should have absolute control and disposition over the entire subject of the gift, both while living and at death. The last clause which authorizes him as executor to sell the real estate and make deeds therefor is the only thing in the will which can in any wise argue against this conclusion. But that clause hardly argues against it. It rather tends, at most, only to confuse. Its purpose is hard to see. No express disposition is made of the proceeds in case William as executor desires to sell. In view of the prior language indicating an absolute devise to William of the entire interest, it would seem that if he as executor had assumed to make a sale under the authority conferred by the last clause, the proceeds would belong to him and not go as upon intestacy. But if he had an absolute interest, the clause authorizing him as executor to make a sale was, of course, unnecessary; and this is what causes a confusion or befuddling of the intent. Reading the peculiar language of this will as a whole, I cannot escape the conclusion that the intent of the testatrix was to give her brother an absolute interest in her real estate, and that the last clause as to sale by him

as executor, if not rejected as surplusage, is to be regarded as only a fortification of William's right of entire control and disposition, previously given, by a confused notion that it would be well to give him the right in his office of executor to make a sale or sales.

There is no limitation placed upon William's *jus disponendi* either as to the class of persons to or among whom the estate may be granted or devised or as to the method of its transmission. What, therefore, was first apparently referred to as a life estate turns out upon further examination of the ensuing language to be in every substantial aspect of the matter an absolute interest. That no apparent purpose of the testatrix could be subserved by denying to the later language the effect of enlarging the interest first given, is manifest not only from the fact that no remainderman is named who shall take in any contingency whatever after the death of William, but as well from the fact that it is clear that the testatrix had no desire to protect the estate from her brother's waste or improvidence during his lifetime. Furthermore, unless the life interest is enlarged to a fee simple, it is apparent that the testatrix so worded her will as to render possible an intestacy, a thing which the residuary clause in question argues against and which the law itself, as observed in *Phillips v. Phillips*, 10 *Del. Ch.* 314, 91 *A.* 452, will seek to avoid by adopting that construction when possible which will circumvent it.

That a fee will pass by language which confers an unlimited right of disposition is not open to question. The solicitor for Anna Duncan Mullen does not contest that proposition. He cites the language of Chancellor Kent, however, in *Jackson v. Robins*, 16 *Johns.* (*N. Y.*) 537, quoted with approval by Chancellor Curtis in *Williams, Adm'x., v. Floyd Adm'r.*, 12 *Del. Ch.* 256, 112 *A.* 377, for a principle of construction which, he contends, operates to restrain the devise in this case to a mere life interest. That language is as follows:

"We may lay it down, as an incontrovertible rule, that where an estate is given to a person generally, or indefinitely, with a power of disposition, it carries a fee; and the only exception to the rule is, where the testator gives to the first taker an estate for life only, by certain and express words, and annexes to it a power of disposal. In that particular and special case, the devisee for life will not take an estate in fee, notwithstanding the distinct and naked gift of a power of disposition of the reversion."

On the face of it the rule of construction thus laid down by Chancellor Kent would seem to conclude the argument in favor of the view that William McMonagle acquired from his sister only a life estate with a power of disposal annexed. But upon reflection, I do not think so. The language of this will, by which a power in its technical sense is thought to be created and annexed to a life estate, appears to me rather to be language which indicates that there is in fact no life estate but a fee simple. The cases which Chancellor Kent cites in support of his statement of the rule are interesting as illuminating it. A brief reference to those cases will serve to show that the rule is intended to apply only where the power of disposal is intended to be a thing detached from the estate granted and in no sense inhering in it as one of its recognized legal incidents. It is one thing to have a right of disposal separate from but annexed to an estate and another thing to have a power of disposal which the law regards as belonging to and inhering in the estate itself. In construing the will in question, I look upon the language which is supposed to annex a power to a life estate as language which shows an intent to create a larger estate, viz., a fee simple, to which the law attributes an unlimited right of disposal as one of its incidents. In this view of the matter, therefore, the rule for which Chancellor Kent is cited as an authority has no application in the instant case. The cases to which he referred in support of his rule contain illustrations both of instances where the power of disposal is clearly meant to be annexed to a gift for life, and as well of where a power of disposal is laid hold of to enlarge an express gift for life into a fee simple. That is to say, the cases cited by him when read together show that a gift in form to A. for life with a power of disposal will in some instances be construed as a life estate with a power annexed, and in others will be construed as a fee. The particular construction adopted in each of those cases, I take it, was determined by the nature of the power, its scope, and extent, and the objects and purposes which the testator desired to accomplish. For instance, in *Tomlinson v. Dighton*, 1 *Salk.* 239, 1 *P. Wms.* 149, and in *Cursling v. Cursling*, 2 *Cox*, 396, there was a gift for life with a power in the life tenant of disposal, *not generally*, but among persons of a certain class. There was a like limited power of disposal in *Reid v. Shergold*, 10 *Ves., Jr.* 370, where the gift was

to A. for life with power of disposal *by will only*. In these cases it is clear that if the limited power of disposal had been allowed to enlarge the life estate into a fee, the intent of the testators would have been frustrated. But in the remaining case cited by Chancellor Kent, namely, *Goodtitle v. Otway*, 2 *Wils*. 6, the gift was to A. for life and then to A.'s issue, and if A. had no issue, then with power in A. "to dispose thereof at her (A.'s) will and pleasure." There was no issue and the Kings Bench held that A. had a fee simple under the will. The instant case is not distinguishable from *Goodtitle v. Otway* where the unqualified right of disposal, with no remainder over in case of default or any other suggestive circumstance to shade it, was allowed the effect of enlarging an express gift for life into a fee simple.

The foregoing are all the cases which Chancellor Kent cites in support of the rule here relied upon by the solicitor for Anna Duncan Mullen. For the reasons given I do not think the rule is meant to fit such a case as this one, notwithstanding its exact language would seem at first blush to do so.

William McMonagle therefore received a fee simple title to the real estate devised to him by his sister Rose, and being seised in fee thereof title passed to his cousin, James S. Grant, as residuary devisee under his will.

But if this conclusion should be erroneous, I am of the opinion that upon the other point of view, viz., that William McMonagle had only a life estate with a power of disposal, there was a good exercise of the power by him and that the real estate would pass to the counsin by reason of an exercise of the power in the residuary clause of William McMonagle's will. On this branch of the case there is no contention made concerning the propriety of an exercise of the alleged power by the instrumentality of a will. The only point of dispute is whether the power was in fact exercised. If it was, it must be found to have been exercised in the residuary clause of William McMonagle's will.

The Supreme Court of this State in *Lane v. Lane*, 4 *Pennewill*, 369, 55 *A*. 184, 64 *L. R. A*. 849, 103 *Am. St. Rep*. 122, had occasion to examine the law as to what will constitute a valid exercise of a power. It accepted the tests laid down by Judge Story in the leading American case of *Blagge v. Miles*, 1 *Story*, 426, *Fed. Cas. No.*

1, 479. In that case the following classification, though not stated to be exclusive, is laid down as generally accurate:

"Three classes of cases have been held to be sufficient demonstrations of an intended execution of a power: (1) Where there has been some reference in the will, or other instrument, to the power; (2) or a reference to the property, which is the subject, on which it is to be executed; (3) or, where the provision in the will or other instrument, executed by the donee of the power, would otherwise be ineffectual, or a mere nullity; in other words, it would have no operation, except as an execution of the power."

The residuary clause of William McMonagle's will makes no reference to the power; nor does it make reference to the property which is the subject of it. The clause in question, therefore, does not meet either of the first two tests laid down by Judge Story. If it is a valid execution of the power it must therefore be because it meets the third test. And this, in my opinion, it does. William McMonagle in the present view of the case had no disposable real estate of his own. Yet in the residuary clause of his will he disposed of all the rest, residue, and remainder of his property of whatsoever nature and kind and wheresoever by this language—"I give, bequeath and *devise* unto my aforesaid cousin, James S. Grant, his *heirs* and assigns forever." The use here of the words "devise" and "heirs," if understood by the testator in their precise legal sense, certainly indicates an intention to dispose of real estate. If so, it must be the real estate over which he had a power of disposal from his sister's will, for this was the only real estate in which he had any sort of disposable interest whatever. It may be argued that it is unsafe to assume that a testator in the use of these words understood their technical import and that only real estate was therefore regarded by him as falling within their connotation. Judge Story, in *Blagge v. Miles*, *supra*, while not resting his decision on the presence of those words, nevertheless thought them of sufficient significance to mention as indicative of a reference to real estate. In this case they appear to me of great significance. I say this because in something like twenty-six items of his will, this testator gave as many bequests of money and in each of them he uses the precisely accurate words—"I give and bequeath"—which are technically applicable to personal property. In no one of the twenty-six instances referred to does he, after using such words in disposing of

personal legacies, annex to the name of the legatee any words of limitation, much less the word "heirs." It would seem therefore that this testator, or the draftsman who put in words his testamentary intention, employed the words "devise" and "heirs" deliberately and with full knowledge that real estate was intended thereby to be transmitted. Furthermore, though the residuary clause makes no express reference to real estate, yet in the last paragraph of his will he makes reference to "my real estate" in connection with authority to sell it. The only real estate to which such language could apply was that which his sister's will gave him (on the present view of the case) for life with a power annexed. We are therefore to conclude that the testator thought of this real estate as his own and this circumstance is enough to impel the conclusion that the testator in his residuary clause intended to dispose of it. In this respect the case is similar to *Blagge v. Miles*, *supra*, where an exactly similar situation was allowed by Judge Story to control the construction in favor of an exercise of the power by a residuary clause as general in its nature as the one we are here dealing with.

On the whole, therefore, it seems to me that even if William McMonagle had only a life interest in and a power annexed to dispose of the real estate and not a fee, yet the language of the will is such, coupled with the fact that the only real estate in which he had any interest was that to which the power related, as to reveal a clear intent by him to refer to this real estate in the residuary clause. Unless this be so, what appears to be deliberately chosen language must be rendered senseless and a nullity for the want of something to apply it to.

In William McMonagle's will, as in his sister's, here is at the end a power given to the executors to sell the real estate. As the only effect of this can be to raise a dispute between the executor and the residuary devisee concerning the propriety of a sale by the executors, and as the record shows there is in fact no dispute between them, they acting in harmony, there is no occasion for me to discuss this aspect of the case.

Decree in accordance with the foregoing.