SECURITY TRUST COMPANY, a corporation under the Laws of the State of Delaware, and NATALIE S. SPRUANCE, Executor of the Last Will and Testament of Henry R. Spruance, late of the City of Wilmington, New Castle County and State of Delaware, deceased, and SECURITY TRUST COMPANY, a corporation under the Laws of the State of Delaware, Executor and Trustee under the Last Will and Testament of Henry R. Spruance, and Trustee under a certain agreement bearing date the Twenty-first day of February, A. D. 1931,

*vs.*

MARY E. SPRUANCE, MARY E. SPRUANCE, Administratrix of Emily W. Spruance, deceased, NATALIE S. SPRUANCE, ELEANOR SPRUANCE SCHABINGER and ALETHIA R. SPRUANCE, Executrices of the Last Will and Testament of Edgar Spruance, late of Kent County and State of Delaware, deceased, "UNIVERSITY OF DELAWARE," a corporation under the Laws of the State of Delaware, "ST. PETER'S PROTESTANT EPISCOPAL CHURCH, OF SMYRNA, DELAWARE," a Religious Corporation of the State of Delaware, and WILLIAM W. BARNES.

*New Castle, June* 20, 1934.

*Charles B. Evans* and *Samuel Handloff,* for complainants.

*Thomas C. Frame, Jr.,* for Mary E. Spruance and Mary E. Spruance, administratrix of Emily W. Spruance, deceased.

*Thomas M. Keith,* for Evelyn Spruance Poole, Alethia R. Spruance, H. Louise Spruance, Eleanor Spruance Schabinger, Owen E. Spruance and Horace E. Spruance.

*John Pearce Cann,* for University of Delaware.

*John B. Jester,* for William W. Barnes.

THE CHANCELLOR: The bill in this case asks for instructions upon two questions.

1. By the third item of his will Henry R. Spruance devised as follows:

> "All my interest in the estate of my aunt, Mary R. Hoffecker, I give, devise and bequeath unto my sisters, Mary E. Spruance and Emily Woodall Spruance, share and share alike.

Mary R. Hoffecker had predeceased Henry R. Spruance leaving a will, in which she devised life interests in certain real estate to certain named persons, with remainders over in fee to four persons, among whom were Henry R. Spruance and his brother, Edgar Spruance, each of whom took a one-fourth interest. Edgar Spruance conveyed his one-fourth interest to his brother, Henry R. Spruance. At the time the latter executed his will in which the above quoted item appears, the testator therefore held one-fourth of the estate of his aunt, Mrs. Hoffecker, as a devisee from her and another one-fourth interest as grantee from his brother.

The question propounded by the bill is whether the third item of Henry R. Spruance's will devises the one-half interest which the testator held in the lands formerly owned by his aunt or only the one-fourth interest which he acquired by devise from her.

It is to be observed that the devise in the third item is of a legal estate. No interest, right or power of any sort is conferred upon the executors with respect to the subject of the devise of the third item. That being so, of what concern to the executors can the meaning of the item be? The duties of the executors of this will relate exclusively to the personal estate. The executors are not entitled to request of this court that it construe the will in its dispositions of real property. *Casperson v. Dunn,* 42 N. J. Eq. 87, 6 A. 488; *Torrey v. Torrey,* 55 N. J. Eq. 410, 36 A. 1084.

The trustee under the will is, however, a party complainant and as such requests that the item be construed. Is it entitled to have its request favored?

If it is, it is not because of anything that appears in the item itself, for the item creates no trust. It devises a plain legal estate, not to the trustee but to the testator's sisters. The only debatable question which inheres in it is the extent of the words "interest in the estate of my aunt" as descriptive of the subject matter of the devise. That is a purely legal question. Does "estate" mean property generally of the aunt, or does it mean only that portion of her property which came to the testator from her in the regular course of posthumous devolution? If the latter, then the testator devised only a one-fourth interest; if the former a one-half interest. Thus the legal title to the difference, or a one-fourth interest, is in issue. If the disputed one-fourth did not pass by the third item, then it composed a portion of the residuary estate. The residue was given by the will to the complainant, Security Trust Company, in trust.

The terms of the trust are clear. No question is suggested as to their meaning. The only question that the trustee is perplexed by is whether or not the disputed one-fourth interest constitutes a portion of the corpus of the trust. That is a question of legal title. It presents a rivalry of claim to ownership between the devisees mentioned in the third item and the residuary devisee. The residuary devisee is the complainant as trustee.

Does the fact that a trustee happens to be a claimant to the legal title to property to which others assert an adverse legal claim, give the Court of Chancery jurisdiction to draw the question of title before it for adjudication? I think not. Bills for the construction of wills are not entertained when their sole purpose is that of construction, disconnected from any further relief, and a court of equity "will never exercise a power to interpret a will which only deals with and disposes of purely legal estates and interests, and which makes no attempt to create any trust relations

with respect to the property donated." 3 *Pomeroy, Equity Jurisprudence,* (*4th Ed.*), § 1156.

But, here it may be said, there is a trust, viz., the trust created by the residuary disposition. That is true. The question, however, is whether the property in dispute is a part of the residue; not what are the duties of the trustee with respect to it in case it is a part of the residue. It is therefore a pure question of legal title—does the trustee have the title or do the specific devisees mentioned in the third item have it? I do not understand it to be the law that the mere circumstance that a trustee asserts a legal title will empower a court of equity to turn itself into a legal forum for determination of the rights of rival claimants to the property in dispute. If such were the rule, the extent to which the jurisdiction of equity would be enlarged in encroachment upon the legal forums would be difficult of circumscription. That a purely legal controversy to which a trustee is a party arises out of a will gives it no more right to adjudication by a court of equity than if the trustee's claim were based on a disputed chose in action. In either case the question involved would be—is the subject matter of the controversy an asset to which the trustee has legal title and which, if he has, is subject to the trust; and the same principle which would give equity jurisdiction in the one case would in point of reason give it jurisdiction in the other.

The question here under discussion arose in New Jersey in the case of *Hoe, et al., v. Hoe, et al.,* 84 *N. J. Eq.* 401, 93 *A.* 882. In that case the court was asked by a trustee to construe a codicil to the will of one Hoe. The codicil devised an interest in land to a daughter. Whether she took an estate for life or in fee was the point in controversy. If she took only a life estate, the complainants as trustees were devised the fee in remainder as a part of the residue; if she was given the fee, the trustees took nothing. The question which was therefore presented to the court by the trustees, was not one concerned with the

terms of the trust and their interpretation, but one which was concerned with what constituted trust assets. The Vice Chancellor refused to pass upon the question on the ground that it called for the determination of a legal title which should be decided in the law courts, that the court was asked for no relief other than mere information and that no decree could be entered which could be made binding on the parties.

The question presented by the bill does not, then, come before the court in such a manner as justifies its answer. If it were proper for the court to answer it, there would be no difficulty in doing so, for it is one that does not admit of any serious doubt. Inasmuch, however, as any expression of opinion would, in the light of the foregoing, be pure dictum, no opinion will be expressed.

2. The next question is one upon which Security Trust Company, trustee under the agreement of February 21, 1931, is plainly entitled to be instructed.

The facts are as follows: On April 2, 1923, Henry R. Spruance entered into an agreement with Security Trust Company under which the latter was to hold certain insurance policies transferred to and deposited with it by the said Spruance, in trust to apply their proceeds when paid in accordance with the directions therein set forth. The agreement reserved a power of revocation to the trustor, said power to be exercisable "at any time upon notice to the said Trustee in writing." This agreement was supplemented by a change in terms in 1924.

On February 3, 1926, a new agreement of trust was executed between the same parties, dealing with the same insurance policies, but varying the terms of the disposition to be made by the trustee of the proceeds when received. This agreement contained a recital which referred to the one of April 2, 1923, and its supplement, and the power to revoke, and it then proceeded to state that the trustor "exercising the right reserved by him under said agreement does hereby revoke and make void" the same and the sup-

plement thereto, and "in lieu thereof, hereby makes and executes * * * the following agreement," the terms of which followed. The new trust agreement of February 3, 1926, contained a reservation of the right to revoke similar to the one appearing in the first agreement.

On February 26, 1931, the trustor entered into a third agreement with the same trustee, touching the same insurance policies and their prospective proceeds, but changing the manner of their disposition from that which the agreement of February 3, 1926, directed. In the agreement of 1931 there is an attempt made to exercise a power of revocation. The attempt, if we look to the language which expressed it, was vain, for the agreement which the language declared to be revoked and made void, was not the then existing one of 1926 but the earlier one of 1923 as supplemented. It is argued that the draftsman of the 1931 agreement was guilty of carelessness in applying the revocation to the 1923 agreement (which had been revoked in 1926), that what was in fact meant to be revoked was the 1926 agreement and that the trustor so intended. That the trustor thought that he had effectively revoked the 1926 agreement, it is said, is evident from the fact that his copy of the 1926 agreement was found among his papers after his decease with changes thereon made so as to make it accord in exact terms with the 1931 agreement.

Since this is a bill for the interpretation and not the reformation of the 1931 agreement, the agreement must be taken as it is without change or alteration of its language.

That being so, the question arises which the bill propounds—does the agreement of 1931 revoke the one of 1926 notwithstanding no reference to the latter is anywhere made therein and the purported revocation is expressly aimed at another and distinct, though non-existent, agreement?

Where a power to revoke is reserved but the manner of its exercise is specifically prescribed, a revocation to be effective must conform to the designated manner. 26 *R.*

*C. L., p.* 1206; 65 *C. J., p.* 347. In this case there is no definition of the form in which the intent to revoke shall be evidenced. The only requirement is that when the decision to revoke is made, notice thereof in writing shall be given to the trustee. As the trustor retained the altered copy in his possession and, so far as appears, the trustee knew nothing of it, it cannot be pretended that the mere existence of the copy though altered by the trustor himself amounted to a notice to the trustee in writing. The altered copy is therefore of no significance.

But the trustor entered into the new agreement of 1931. So did the trustee, who was also trustee under the 1926 agreement. As the 1931 agreement was in writing the trustee-party had notice in writing of all of its contents and purposes. That agreement contained no notice in formal terms of a decision by the trustor to revoke the 1926 trust. But if the agreement otherwise expressed an intent to revoke the earlier one there is no reason why the intent thus otherwise expressed should not be as fully effectuated as though it had been declared in formal terms. The condition, that notice in writing should be given to the trustee, is met; and the only remaining question is whether that of which the trustee had notice in writing was in fact a declared intention on the part of the trustor that the earlier agreement should stand as revoked and void.

That such was the plain and unmistakable intent of the trustor in executing the later agreement seems to admit of no serious doubt. The agreement dealt with the same identical *res* that the earlier one covered. If the earlier one stands, the later one must fall. They are irreconcilable. It is not absolutely essential for the exercise of a power that the donee of it shall always formally declare his intention to exercise it. If there is a reference to the property which is the subject of the power, or where the instrument which is questioned as an exercise of the power would be a nullity unless it were as claimed, it is settled that the power is as effectively exercised as though a purpose to exercise it had

been affirmatively disclosed. *Lane v. Lane,* 4 *Pennewill,* 368, 55 *A.* 184, 64 *L. R. A.* 849, 103 *Am. St. Rep.* 122; *Grant, et al., v. Mullen, et al.,* 15 *Del. Ch.* 174, 138 *A.* 613; *Wilmington Trust Co., et al., v. Grier, et al.,* 19 *Del. Ch.* 34, 161 *A.* 921. These cases arose under wills. But their principle is applicable here. In this case the right to revoke was a power reserved. If it is asked—did the trustor intend to exercise his power?—and it appears that his act dealt with the entire subject matter of the power and that unless his act was an exercise of the power it was a pure nullity, the answer must be as it is in the law of wills, that the power was exercised. *Gaither v. Williams, et al.,* 57 *Md.* 625; *Cowlinshaw v. Hardy,* 25 *Beav.* 169, 53 *Eng. Reprint* 601; *Scrope's Case,* 10 *Co. Rep.* 143 (b), 77 *Eng. Reprint* 1143.

The conclusion is that notwithstanding the agreement of 1931 contained no express revocation of the one of 1926, yet, since it dealt with the same *res* or corpus and could not operate in any degree except as the earlier one was revoked, a clear intent to revoke was revealed. The intent was evidenced to the trustee in writing and the revocation was therefore in exercise of the power according to its terms.

Decree in accordance with the foregoing.