MAURICE B. RISSMAN, Co-Trustee under Agreement and Deed in Trust dated March 31, 1933, as enlarged by Agreement and Deed in Trust dated August 16, 1933, and Trustee under Agreement and Deed in Trust dated June 2, 1933,

*vs.*

KRENN & DATO CONSTRUCTION COMPANY, a corporation of the State of Delaware, and LOUIS W. ADAMS, co-trustee, under Agreement and Deed in Trust dated March 31, 1933, as enlarged by Agreement and Deed in Trust dated August 16, 1933.

*New Castle, March 17, 1938.*

*Hugh M. Morris* and *Edwin D. Steel, Jr.,* for complainant.

*William G. Mahaffy* and *Herbert L. Cohen,* for defendant Krenn & Dato Construction Company.

THE CHANCELLOR: In this case the bill seeks a decree against Krenn & Dato Construction Company for the payment of a negotiable promissory note in the face amount of $56,400.00 made by Krenn & Dato Construction Company to the order of Edwin D. Krenn and bearing date March 7, 1932.

The complainant claims that he and the defendant Louis W. Adams own the note as co-trustees. Though the note was made negotiable in character, the complainant concedes on his brief that he and his co-trustee are not holders in due course within the meaning of the negotiable instruments act. He claims that their status is that of assignees of a non-negotiable instrument. The demurrant accedes to this view.

Even so, says Krenn & Dato Construction Company, the demurring defendant, complainant has an adequate remedy at law, and so the bill should not be entertained in this court of equity.

The demand is a purely legal demand. Being such, it would not ordinarily, of course, be the subject of equitable relief. The circumstance which the complainant relies

upon as entitling him to sue in equity consists in the fact that he as sole trustee is the assignee of a one-half interest in the note upon a certain trust, and as co-trustee with Adams is the assignee of the other one-half interest upon a certain other trust. Thus the whole interest in the note has been divided into halves, and each half interest, having been separately assigned, is now owned in separate right.

Adams as co-trustee with the complainant of one of the half interests, has refused to join as a party complainant in the bill and so has been made a party defendant. Whether Adams would be equally recalcitrant in joining as a plaintiff in some appropriate law action, if such is maintainable, is not stated by the bill. On this demurrer, therefore, we must consider that Adams, though averse to cooperating with the complainant in filing a bill in equity, would be entirely willing to join with him in an action at law if such action were allowable.

The question then is—has a law court jurisdiction of an action on this note at the suit of a partial assignee?

The question resolves itself into one of parties, for the subject matter of the action, viz., the demand, is clearly within the legal cognizance.

At common law, a chose of action was not assignable under any circumstances. Law took no notice of it. In equity, however, the right of the assignee was early recognized as meriting relief. Later, the law courts so far recognized the equitable rights of the assignee as to permit him to use the name of the assignor as plaintiff in a law action for the use of the assignee. The consent of the assignor was not necessary. Neither could his objection defeat the assignee's right to use his name as the plaintiff. This is the rule in Delaware. *Milford Co. v. Short,* 6 *Boyce* (29 *Del.*) 562, 101 *A.* 238; *Illinois Finance Co. v. Interstate Rural Credit Ass'n.,* 11 *Del. Ch.* 349, 101 *A.* 870; *Continental Guaranty Corp. v. People's Bus Line,* 1 *W. W.*

*Harr.* (31 *Del.*) 595, 117 *A.* 275; *Wooley, Delaware Practice,* § 150.

In some instances an assignee may sue at law in Delaware in his own name. This, however, is by virtue of statutory authorization. There are two statutes conferring such right. One is found in *Section* 3107, *Revised Code* 1935. That section is applicable to assignments of bonds, specialties and notes. But in order for the assignee to be permitted to sue in his own name under that section, the assignment must be under the assignor's hand and seal before at least one credible witness. In the instant case one at least of the assignments was under hand alone and unwitnessed. *Section* 3107 has, therefore, no application. *Kinniken v. Dulaney*, 5 *Har.* 384. How the other assignment was made does not appear.

The other statutory provision appears in *Section* 4684, *Revised Code* 1935, which provides generally that a person to whom a contract, express or implied, has been transferred or assigned, either in accordance with a statute or with the common law, may sue thereon in his own name. This statute has no application to the instant case, for the reason that the assignments here were not of a contract, but of partial interests under a contract. *Atlantic City v. Warren Bros. Co.*, (3 *Cir.*) 226 *F.* 372; *In re Stiger,* (*D. C.*) 202 *F.* 791; *Sternberg & Co. v. Lehigh Valley R. Co.*, 78 *N. J. L.* 277, 73 *A.* 39, *Otis v. Adams*, 56 *N. J. L.* 38, 27 *A.* 1092.

If, therefore, the partial assignees, or either of them alone, can maintain an action at law, the right to do so must be found to rest on general principles, unsupported by any statutory aid.

If the note had been assigned in its entirety to the complainant alone, an adequate remedy at law, as before indicated, would be plainly available and equity would de-

cline to exercise its jurisdiction. *Illinois Finance Co. v. Interstate Rural Credit Ass'n., supra.*

But it was not assigned in its entirety. First, the payee assigned a one-half interest to Dato, who in turn later assigned the same to the complainant as trustee. The one-half interest remaining in the payee, after the assignment to Dato, was assigned to the complainant as trustee who in turn assigned a half of the half to Baldwin as co-trustee, for whom Adams was substituted as trustee, I suppose by a proper assignment.

Thus we have a series of partial assignments. The creditor has split his demand into parts, and those parts have been in turn assigned. Certainly, whether the proceedings be at law or in equity, the debtor ought not to be required to respond to a demand from each of the partial assignees. As his obligation was to pay a single sum, he is entitled to be sued for it *in solido* and not be subjected to as many suits as there are fractional interests of the creditor's creation. Of course if the debtor consents and agrees to the partial assignment, the case is entirely different. See the annotation in *Ann. Cas.* 1912 *A.* 676.

While our law forum has on many occasions, through the device of a use action, enforced the equity of a sole assignee whose assignment lay outside the scope of the above referred to statutory provisions, no case has arisen in this State where the law courts have been called upon to say whether or not a use action could be resorted to by assignees of partial interests. What the answer would be which the Delaware legal forum would give in such a case, I am unable to say.

It is stated in 1 *Contracts, A. L. I.,* § 156, to be the rule that an assignment of a part of a single and entire right against an obligor will be enforced as if the part had been a separate right, subject to the limitation, however, that if the obligor has not contracted to make such a par-

tial performance, no legal proceeding can be maintained by the partial assignee against the obligor over his objection, unless all persons having collectively a right to the entire performance are joined in the proceeding. That this rule, in its application to actions at law, is sustained in some of the cases, cannot be doubted. But it is to be observed that in the cases which announce it, more often than not some statutory provision exists which supports it. For illustration, see *Evans v. Durango Land & Coal Co.,* (8 *Cir.*) 80 *F.* 433; *Gaugler v. Chicago, etc., Ry. Co.,* (*D. C. Mont.*) 197 *F.* 79, where the rather extensively adopted state statute was applied which requires that every action shall be prosecuted in the name of the real party in interest. See, also, *Atlantic City v. Warren Bros. Co.,* (3 *Cir.*) 226 *F.* 372, 373, 379, where the New Jersey statute, *P. L.* 1912, *p.* 386, *rule* 9, is quoted which provides that "if a part interest in a contract obligation be assigned, the assignor (retaining the remaining interest) and the assignee may be joined as parties." State statutes of this sort govern the Federal courts, *Delaware County v. Diebold Safe Co.,* 133 *U. S.* 473, 10 *S. Ct.* 399, 33 *L. Ed.* 674, and so controlled the decisions in the illustrative cases just cited. In reading the cases in the various jurisdictions, care must be taken in appraising them to ascertain whether or not they are decided in the light of any statutory enactment analogous to those just referred to. Any such statutory provision renders a case arising under it of no relevancy here in Delaware, for here no such or similar statutory provision is to be found.

In the recent Pennsylvania case of *Gordon v. Hartford Sterling Co.,* 319 *Pa.* 174, 179 *A.* 234, 236, it is stated, as obiter it seems to me, to be the rule that "where part of a chose in action has been assigned, *the assignor and assignee may unite in a suit for the enforcement of the chose;* the assignor may sue alone, but the assignee may not sue on it in his own name." (Italics supplied.) The court cites

5 *C. J.* 999 in support of its statement of the rule. Reference to the cases cited to sustain the italicized portion of the text of *Corpus Juris* shows some of them at least to rest on statutory provisions.

It is quite clear in Delaware from the reported decisions and by the uniform, practice, that in no case can an assignee sue in his own name (as indicated in the quotations from *A. L. I.* and the Pennsylvania case), unless he can bring himself within one of the statutory provisions hereinbefore commented upon.

It may be true that cases are to be found in some few jurisdictions where the common law concepts, practice and procedure are less faithfully adhered to than in Delaware, in which it was held that, even though there is no authorizing statute, if all parties having partial interests in a single claim are before the court, they may proceed in a single action at law to enforce it.

When the question has been discussed in such cases, it appears to be treated solely as one of parties—whether all possible parties are before the court, so that when judgment is rendered the debtor may be certain that no partial assignee can subsequently annoy him with an action. In other words, the courts in such cases have concerned themselves only to see to it that the debtor's right to be sued *in solido* is not impaired.

But I conceive that the question strikes its roots in deeper soil than that. If it were not so, there never could have been any justification for the refusal of the common law courts to allow a sole assignee to sue in his own name, for a suit by the sole assignee would have assured the debtor of his right to be called upon to pay his debt only once and then *in solido*.

The difficulty at common law was not one of parties. The refusal of the common law courts to allow an assignee

to sue, was due to the fact that the common law courts took no notice of an assignment. They afforded it no recognition as creating a relationship of right. An assignment was as completely removed from the scope of their ken as was a trust. There was, then, nothing in contemplation of law to be sued upon. It was equity alone that was able to see a right in an assignee. But even equity, if the assignments were of partial interests, according to some authorities, though they are in the decided minority, refused to recognize any justifiable right in the partial assignee. See *Annotation,* 80 *A. L. R.* 428, and cases cited. If courts of equity in which the doctrine of assignments had its origin, are thus not unanimous in recognizing the right of a partial assignee to proceed against the debtor, *a fortiori,* it would seem, courts of law would be more reluctant to do so.

As before stated, the law forums came eventually to afford a practical recognition to the assignee's equitable right by allowing him to use the assignor's name in a suit against the debtor. But even then, the law insisted that in point of form the action should adhere to the legal concept that it was the original creditor's claim, the assignor's, that was being asserted. The assignee's presence was indulged only as a use plaintiff.

If it be correct then to say that the question of an assignee's right to sue, absent a statute, strikes deeper than the mere question of parties and is involved in the fundamental differences that distinguish legal from equitable rights, it must follow that the question is only half answered if the sole inquiry is whether all possible parties are before the court. Another and more fundamental inquiry will remain even if the one as to parties be satisfactorily answered. That question is—have the law courts extended recognition to the asserted right?

That the Delaware law courts have accorded a quali-

fied recognition to an assignment of an entire interest in a chose in action is, as I have heretofore remarked in the course of this opinion, very clear. But it is equally clear that they have never revealed a determination to advance so far in the field of equitable rights as to include assignments of part interests to various persons within the scope of their remedial processes.

The demurrant insists that if a case of partial assignments were presented to the law court, recognition of the partial assignee's rights would be afforded as freely as it is afforded to those of a sole assignee; that the device of a use action would be applied to the case; and that if any of the partial assignees were recalcitrant and refused to join as a use plantiff (as one of the partial assignees is probably recalcitrant in this case), it would be in the power of the other or others to use his name against his will on the plaintiff's side of the case, in analogy to the asserted right of one of two obligees to use the name of his unwilling obligee in an action against their obligor, citing 15 *Encyclopedia of Pleading & Practice, p.* 532 (4), 47 *C. J. p.* 62, § 127, and *Page, Law of Contracts,* § 2079, in support of the last proposition.

This may be true, but the law judges of this State have never said so. Whether they would so adjudge, we have no way of knowing. I seriously doubt that they would. What would be the form of the judgment at law? Would it be split into fractions as the claim had been split by the assignor and judgment given in favor of each fractional owner for his particular part? As the right of partial assignees would seem not to be joint rights, ought not the judgment go to each for the part due him? It seems to me so. And if so, would not the common debtor be entitled to plead against each of the partial assignees any separable defense particularly applicable to each, such for instance as that of set-off? Then, too, suppose there existed among the partial assignees a controversy involving priorities, a

question which would become of acute interest in the event of the insufficiency of the debtor's assets to yield full satisfaction on execution—would the law court adjudge the ranking priorities, as undoubtedly a court of equity could?

It would seem that such questions as these and others that reflection may suggest and experience would doubtless evolve, ought to be settled in a single piece of litigation. It is in fact this consideration, along with the refusal of the common law to recognize a legal right in assignees of choses in action, which constitutes the origin of the jurisdiction in equity. A court of equity can mould its decrees to meet the just requirements of varied fact situations and adjust its remedies to the particular circumstances of each of the parties in his relationship to the others—and this in one decree.

In *Harris County v. Campbell*, 68 *Tex.* 22, 3 *S. W.* 243, 2 *Am. St. Rep.* 467, jurisdiction was entertained by a law court of an action by partial assignees to recover from their common debtor. It is interesting to note the form the judgment took in that case. It adjudged the total sum due from the debtor and then proceeded to award to the respective assignees the amounts due them and the order of priority in their payment.

This judgment, though at law, is typically one that is characteristic of equity. In this State where the line of demarcation between law and equity is less obscure than elsewhere in America, excepting possibly in New Jersey, where as here the two jurisdictions are entrusted to separate and distinct tribunals for their administering, with no overlapping of judicial personnel except in the appellate court, such a judgment at law as was rendered in the above cited Texas case would, I conceive, be regarded as a most startling innovation. Yet, if the law courts should entertain jurisdiction of suits by partial assignees, it seems to me that they would be required, in the interest of doing

full justice and of bringing repose to controversy, to adopt, as in the Texas case, a form of judgment which in all essentials is distinctly equitable in character. In this State the form of judgment at law is rigid—it is that the defendant owes to the plaintiff or plaintiffs a certain single undivided sum of money. This form is incapable of adaptation to the special circumstances and relative situations of the parties entitled to its payment.

It hardly becomes the Chancellor to be dogmatic about what the attitude of the law courts of the State would be upon a proposition of law upon which they have never been called upon to express an opinion. The demurrer in this case requires me, however, to express my opinion upon what the law court would do if the case was before it. I do not think the suit would be entertained. At all events, the question is too doubtful to justify this court of equity in refusing to entertain the suit and thereby abandon a jurisdiction which equity in former times has repeatedly exercised.

That suit by a partial assignee is unquestionably entertainable in equity was long ago adjudicated. In an annotation found in 80 *A. L. R.* 414 it is stated that "notwithstanding many broad statements to the contrary met with in courts of law or elsewhere, the rule overwhelmingly supported by the cases wherein the point has been involved or squarely considered is that the assignment of part of a debt, although unassented to by the debtor, is enforceable against him in equity * * *." Authorities in great number are cited in support of the text. I refrain from reviewing them. The question naturally occurs—why the multitude of adjudications, early but mostly recent, sustaining the jurisdiction in equity, if all the while there was a method whereby at law a partial assignee was able to secure an adequate remedy? The inquiry in such cases should be, not so much whether such cases present features of

equitable cognizance, as whether an adequate remedy at law has come into existence whereby the heretofore undoubted jurisdiction in equity has been ousted. That inquiry would invite a consideration of the question of whether, upon the arising of a remedy at law for causes which theretofore had been cognizable only in equity, the ancient jurisdiction of the latter would be ousted. There are some expressions in our courts upon that question. But the necessities of the pending case do not require me to examine it. This is for the reason that it is far from clear to me that the legal forum would afford any remedy whatever, not to say an adequate remedy, to a partial assignee of a chose in action.

It needs hardly to be stated that the fact that the partial assignees are trustees does not aid to support the jurisdiction in this court, for if a trustee seeks to assert a purely legal claim, he must resort to a legal forum. *Security Trust Co. v. Spruance, et al.,* 20 *Del. Ch.* 195, 174 *A.* 285. For the other reasons, therefore, hereinabove stated at length, the jurisdiction is sustained and the demurrer will be overruled.

Order accordingly.