**In the Matter of Minnie L. MARKEL, an Aged and Infirm Person.**

Supreme Court of Delaware.

May 14, 1969.

Daniel M. Kristol, of Killoran & Van
Brunt, Wilmington, for Adolph Markel, Jr.

Charles S. Crompton, Jr., of Potter, Anderson & Corroon, Wilmington, for Delaware Trust Co.

WOLCOTT, C. J., CAREY, Justice, and MESSICK, Judge, sitting.

WOLCOTT, Chief Justice.

This is an appeal from a judgment in Chancery holding that certain items of jewelry, the property of an aged and infirm person, be delivered to the guardian of said person.

Minnie L. Markel, aged 87 years, was confined in 1966 to a nursing home. Her three children by agreement shared her expenses. One of the children insisted, as a condition to participation, that Mrs. Markel's property be placed in safekeeping. An agreement to this effect, containing an inventory of property, was entered into. Included in this inventory were several pieces of valuable jewelry then in the possession of a son, Adolph Markel. He refused to deposit the jewelry in safekeeping, claiming that it had been given to his wife by his mother some time before.

Thereupon, in 1967, one of Mrs. Markel's daughters petitioned the Court of Chancery, under 12 Del.C. § 3914, for the appointment of a guardian for her mother. The petition listed, *inter alia,* the jewelry as known assets of the ward. The guardian made demand for the jewelry from Mr. Markel who rejected it. The guardian thereupon petitioned the Vice Chancellor who, after a hearing, ordered the delivery of the jewelry. Mr. Markel appeals.

Two points are made by the appellant: (1) That Chancery has no jurisdiction to determine title to the jewelry, and (2) that the record does not support the finding that title to the jewelry is in the ward.

It is asserted that Chancery has jurisdiction over this matter by reason of 12 Del.C. § 3914. Subsection (d) of § 3914 provides that "all matters relating to the appointment, qualification, duties, powers, liability to account, and the distribution of property at the recovery or death of the ward" shall be governed by the law and rules of the Court of Chancery governing the management of the estates of mentally ill persons.

■ In re DuPont, 41 Del.Ch. 300, 194 A.2d 309, held that the grant of 12 Del.C. § 3914 conferred upon the Court of Chancery the same powers exercised through a guardian over the property of the aged and infirm as it had long exercised through a trustee over the property of the mentally ill. By 12 Del.C. § 3705, a trustee appointed to manage the estate of a mentally ill person is authorized "in the name of the mentally ill person [to] do whatever is necessary for the care, preservation and increase of his estate." It follows, therefore, that a guardian has the same powers and duties with respect to his ward's estate as does the trustee of a mentally ill person.

■ Chancery jurisdiction over the estates of incompetents is derived solely from statutes conferring it. It is not part of the inherent jurisdiction of the court inherited from the High Court of Chancery of Great Britain at the time of the separation. In re Harris, 7 Del.Ch. 42, 28 A. 329; In re Reeves, 10 Del.Ch. 483, 94 A. 511; 4 Pomeroy's Equity Jurisprudence (5th Ed.), § 1313.

In Great Britain the Chancellor took jurisdiction over lunatics, not by reason of the traditional equitable jurisdiction of the High Court of Chancery, but as a great officer of the Crown under the Sign Manual of the King authorizing him to preserve the lunatic's estate until he regained sanity. 2 Storey, Equity Jurisprudence, § 1336; Bispham, Principles of Equity, §§ 551, 552. When this jurisdiction conferred by the Sign Manual, an exercise of the King's power as *parens patriae,* was exercised by the Chancellor by appointing a committee of the lunatic's person and property, then jurisdiction arose in the Court of Chancery to supervise and control the lunatic's estate as part of the Court's general authority over trusts, trustees and fiduci-

aries. 4 Pomeroy's Equity Jurisprudence, § 1311.

It is thus plain that any power the Court of Chancery has over the estates of infirm or mentally ill persons is derived solely from statutes and is thus limited by the terms of the statute. The guardian concedes this proposition, but argues that 12 Del.C. § 3914(d) clearly allows Chancery to entertain this particular suit. That section confers upon guardians all the powers of trustees of mentally ill persons with respect to the appointment, powers, liability to account, and distribution of property at the recovery or death of the ward.

We think, however, that the cited section does not and cannot confer upon the Court of Chancery jurisdiction over causes of action which do not fall within the inherent jurisdiction of Chancery. The statute does nothing more than substitute the guardian for the ward in the management of his property, and authorize him to act in the place and stead of the ward. Thus, we think the guardian could bring suit in the ward's behalf to bring his property into possession. But there is nothing in the statute which in terms purports to confer upon the Court of Chancery jurisdiction to decide all controversies which the guardian may provoke through his efforts to assemble the ward's property.

This controversy is a dispute between the guardian and a son of the ward regarding the ownership of personal property. Ordinarily, a disputed claim of the right to possession of chattels is determined in an action of replevin in the Superior Court before a jury. While the right asserted in replevin is on its face a right to possession, nevertheless, it has become over the years a useful method to determine the title to goods and chattels. 2 Woolley on Delaware Practice, § 1524; Bennett v. Brittingham, 3 W.W.Harr, 519, 140 A. 154.

Furthermore, Article I, § 4 of the Delaware Constitution, Del.C.Ann., guarantees the right of trial by jury in such an action, and a deprivation of that right to one or both of the claimants to the property would be in direct violation of the constitutional guarantee. State v. Fossett, 11 Terry 460, 134 A.2d 272.

The guardian urges that it has no right to bring an action of replevin for the recovery of these particular chattels, but such is not the case. The action of replevin is available to anyone who claims ownership, or the right to immediate possession of a chattel. 2 Woolley on Delaware Practice, § 1525; Maclary v. Turner, 9 Houst. 281, 32 A. 325; Stockwell v. Robinson, 9 Houst. 313, 32 A. 528. The guardian of a ward charged with the administration of the ward's estate has a right to obtain possession of the estate's assets. Since the guardian has the right to possession of the ward's assets, it follows that the guardian has the right to bring an action of replevin to obtain that possession, and, at the same time, the adverse possessor has the constitutional right to have the issue determined by a jury. The mere fact that one of the parties is a fiduciary, trustee or guardian, will not suffice to confer jurisdiction upon the Court of Chancery over a cause in which the fiduciary seeks to assert a purely legal claim. Security Trust Co. v. Spruance, 20 Del.Ch. 195, 174 A. 285; Rissman v. Krenn & Dato Const. Co., 22 Del.Ch. 309, 2 A.2d 128.

By reason of all the foregoing, it follows that the Court of Chancery does not have jurisdiction over this controversy because there is an adequate remedy at law. It was therefore error for the Vice Chancellor to have decided the question of ownership of the jewelry. He should have transferred the cause for trial to the Superior Court under 10 Del.C. § 1901.

This cause does not fall within any field of inherent jurisdiction of the Court of Chancery. This is so because there is a complete and adequate remedy at law to determine the right to possession of these chattels. There is no allegation or proof

in this record that these particular chattels had a unique or special value, or that there was *pretium affectionis.* It follows, therefore, that the cause does not fall within the field of equity jurisdiction over such items. The plain fact of the matter is that this controversy has an adequate and complete remedy at law and the parties must resort to it.

The foregoing conclusion makes it unnecessary for us to reach the second contention of the appellant that the evidence does not support the Vice Chancellor's conclusion of fact.

The judgment below will be reversed and the cause remanded with permission to transfer it under 10 Del.C. § 1901, to the Superior Court upon application of any party.