**INTERNATIONAL REDISCOUNT CORP., Plaintiff,**

**and**

**Blue Hen Properties, Inc., Involuntary Plaintiff,**

v.

**HARTFORD ACCIDENT AND INDEMNITY COMPANY, Defendant.**

Civ. A. No. 75–102.

United States District Court,
D. Delaware.

Jan. 13, 1977.

---

S. Bernard Ableman, of Connolly, Bove & Lodge, Wilmington, Del., for plaintiff.

William H. Sudell, Jr., of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., Stradley, Ronon, Stevens & Young, Philadelphia, Pa., for defendant.

## OPINION

STAPLETON, District Judge.

This is an action by International Rediscount Corporation ("IRC") against Hartford Accident and Indemnity Company ("Hartford") for breach of contract. The contract in question is a "Comprehensive Dishonesty Disappearance and Destruction" insurance policy executed by defendant and delivered to Blue Hen Properties, Inc. ("Properties").

IRC's complaint alleges the following. During the time the Hartford insurance policy was in effect Blue Hen Finance Company ("Finance"), a 98 percent owned subsidiary of Properties, sustained a loss from certain fraudulent acts by an officer of Finance.[1] On March 15, 1974, Properties submitted to Hartford written proof of the loss which Finance suffered. Such proof of loss was submitted within the time limit of the policies as extended by agreement between Hartford and Properties and was made in the "manner, form and substance required by the terms and provisions of the policies.[2]

On April 23, 1974 Properties and IRC executed an agreement whereby "Properties assigned and conveyed to IRC all its right, title and interest in its claim under the policy with Hartford."[3]

IRC commenced the instant action against defendant on April 18, 1975. Properties was served by IRC and joined as an "involuntary plaintiff" in the suit.

Defendant has filed a motion contending that the suit should be dismissed because the complaint fails to state a claim for

---

1. See ¶ 12 of the complaint.

2. See ¶ 18 of the complaint.

3. See ¶ 25 of the complaint.

which relief can be granted, because plaintiff failed to join an indispensable party, and because the suit has not been brought by the real party in interest. For the reasons stated below I reject defendant's arguments.

## I. FAILURE TO STATE A CLAIM.

Defendant argues that IRC can state no claim against it based on the alleged assignment from Properties to IRC because there was no valid assignment. Defendant's argument is two-fold. First it contends that the agreement in question was not an assignment by Properties to IRC of the right to proceed against Hartford on the insurance claim but rather represented simply Properties' promise to pay to IRC proceeds it might obtain in the future under the insurance policy. Secondly, Hartford contends that even if the agreement were construed as an assignment, it would be ineffective by virtue of a clause in the insurance policy prohibiting assignment of interest in the policy without the insurer's consent.

■ I disagree with defendant's construction of the agreement. The document, entitled "Assignment of Claim" provides, *inter alia:*

FOR VALUE RECEIVED, Undersigned, BLUE HEN PROPERTIES, INC. . . . hereby assigns, transfers and sets over absolutely to INTERNATIONAL REDISCOUNT CORP. (herein called "IRC") . . . all of Undersigned's right, title and interest, in an amount up to and including the total indebtedness of Undersigned which may be owing at any time to IRC . . . in and to any and all sums which may be payable to Undersigned at any time arising out of Undersigned's claims against the Hartford Accident and Indemnity Company, of Hartford, Connecticut, relating to that certain Policy . . . issued by . . . Hartford . . . to Undersigned . . . pursuant to which Policy Undersigned heretofore has filed certain claims. Undersigned hereby authorizes and directs the said Hartford Accident and Indemnity Company to pay and remit all proceeds of any such claim directly to IRC, or to its successors or assigns.

This portion of the agreement purports to assign absolutely to IRC, Properties' interest in a portion of the sums it is entitled to receive from Hartford and directs Hartford to pay those sums directly to IRC.

A subsequent portion of the agreement purports to accomplish two other ends. It gives Properties a right to re-assignment of the interest from IRC in the event Properties' indebtedness to IRC is paid in full. And it gives to IRC the right to require Properties to process the claim under the insurance policy and to pay over to Properties any sums it might collect from Hartford in an amount up to and including Properties' indebtedness to IRC.[4]

Neither of these collateral contracts, however, alters the conclusion that Properties by this agreement assigned to IRC its

---

4. The remainder of the agreement provides:

Anything contained herein to the contrary notwithstanding, IRC is not hereby assigned, and does not hereby assume, any obligation or liability of Undersigned under said Policy, nor shall IRC be required or obligated either to perform any obligation, covenant, term or condition thereof or thereunder, nor to prosecute or otherwise to be or become involved in the prosecution of any claim made thereunder, nor to present or file any claim, nor to take any other action to collect or enforce the payment of any amounts which have been assigned to it hereunder or to which it may be entitled hereunder at any time or times. Undersigned is and shall continue to be and remain liable to observe and perform all the

covenants, obligations and responsibilities of Undersigned pursuant to said Policy, and with respect to the presentation and prosecution of the various claims of Undersigned under said Policy. Undersigned agrees hereby promptly to prosecute all such claims and to file all such forms and other information as the said Hartford Accident and Indemnity Company may require in connection with the claims of Undersigned under said Policy.

This Assignment of Claim is made as additional collateral security for the payment of all obligations now existing or which hereafter may arise owing by Undersigned to IRC, and which now exist or which hereafter may arise owing by the corporate subsidiary of Undersigned, Blue Hen Finance Co., a Dela-

claim to a portion of the sums owed by Hartford. Ordinarily the assignor of a legal right assigns as well the privileges of bringing suit to enforce that right.[5] While the assignor by the terms of his assignment or the context in which that assignment is made could sever attendant powers and privileges from the assignment of legal rights [6] nothing in the assignment here indicates an intent on the part of Properties to limit IRC's capacity to bring suit. Neither IRC's right to compel Properties to process its claim with Hartford, nor Properties' right to re-assignment in the event its debt to IRC is paid in full represents any limitation on IRC's right to proceed against Hartford as Properties' assignee.[7]

It is true as Hartford points out that the assignment, being limited to the amount of indebtedness due from Properties to IRC, may constitute assignment of only a portion of Properties' claim under the policy with Hartford. But that fact does not entitle Hartford to dismissal of the complaint where as here, all parties who may have substantive rights in the claim in question have been joined in a single action.[8]

Hartford further contends that even if the agreement in question were construed to be an assignment from Properties to IRC, that assignment would be ineffective by virtue of an "anti-assignability" clause in the insurance policy itself. Section 18 of the insurance policy provides:

> Assignment. Assignment of interest under this Policy shall not bind the Company until its consent is endorsed hereon; if, however, the Insured shall die, this Policy shall cover the Insured's legal representative as Insured; provided that notice of cancellation addressed to the Insured named in the Declarations and mailed to the address shown in its Policy shall be sufficient notice to effect cancellation of this Policy.[9]

Since its consent was not obtained Hartford argues, the assignment is ineffective.

■ Clauses such as Section 18 quoted above are commonly placed in insurance contracts to protect the insurer against the possibility of increased risks that might attend a change in the identity of the insured if the policy were assigned before the insured-against loss has occurred. 3 *Williston on Contracts* § 422; 4 *Corbin on Contracts* § 873; 5A *Appleman, Insurance Law and Practice* § 3458. It is well-accepted, however, that the rationale behind prohibiting the assignability of an insurance policy before loss does not apply where that which is assigned is a right to proceed against the insurer after loss. As stated in *Georgia*

---

ware corporation of Wilmington, Delaware, to IRC. Upon the payment and performance in full of all such obligations owed to IRC, the latter will reassign to Undersigned all of IRC's right, title and interest in and to the claims of Undersigned under said Policy, and all amounts thereafter payable under said Policy to Undersigned. Undersigned will transmit promptly to IRC, its successors and assigns, any and all sums which may be received by Undersigned relating to its claims under said Policy, up to and including the aggregate amounts then owing by Undersigned and the said Blue Hen Finance Co. to IRC, as determined solely by IRC.

5. See 4 *Corbin on Contracts* § 878 at p. 525: Thus, the owner of a right to money nearly always has the legal privilege of bringing suit to collect it; and an assignee of the right usually obtains by an assignment a similar privilege of suit.

6. 4 *Corbin on Contracts* § 878.

7. The case of *Farm Bureau Co-Operative Mill & Supply, Inc. v. Blue Star Foods*, 238 F.2d 326

(8th Cir. 1956), cited to the Court by defendant, is inapposite. There the court held that the assignee of a chattel mortgage could not bring a tort action for the conversion of the property which was the subject of that mortgage, because the assignment took place after the alleged conversion. To maintain a suit for conversion, the court held, plaintiff must demonstrate that he had title or right to possession of the property in question at the time of the conversion. An assignee who obtained an interest in the property after the time of the conversion obviously would not meet these requirements.

8. See footnote 20. *Cf. Restatement of Contracts*, § 156; *Hughey v. Aetna Casualty & Surety Company*, 32 F.R.D. 340 (D.Del.1963).

9. See Exhibit A attached to affidavit in support of defendant's motion to dismiss.

*Co-Operative Fire Association v. Borchardt & Company,* 123 Ga. 181, 51 S.E. 429 at 430 (Ga.1905):

> The policies of insurance having been assigned after loss, the assignee simply stood in the shoes of the assignor, and any valid defense which the insurer might have had against the insured could be set up against the assignee. No right of the insurer being affected by the assignments of the policies, it would be a mere act of caprice or bad faith for it to take advantage of the stipulation that the transfers were subject to its consent, by withholding such consent, in order to defeat the claim of the assignee.

Consequently, when faced with the construction of a clause limiting the assignability of interests in an insurance policy courts have interpreted such clauses to prohibit only the assignment of the insurance contract before loss.[10]

 Although I have not found, nor have I been directed to any Delaware opinion which addresses this point,[11] I see no reason to conclude that the Delaware courts would reach any different result than have numerous other courts over the years. I conclude, therefore, that the above section of the insurance policy intends only to limit the assignability of an interest in the policy before the insured-against loss has occurred. Since it is alleged that the assignment here occurred after loss and after timely filing of proof of loss with Hartford, I cannot find that Section 18 of the insurance policy renders the assignment ineffective.

In considering defendant's motion to dismiss I have relied on matters outside the pleadings and must, therefore, treat defendant's motion as a motion for summary judgment. Rule 12(b) of the Federal Rules of Civil Procedure. Since I cannot conclude on the record before me that there was no assignment from Properties to IRC or that the assignment was ineffective defendant's motion for summary judgment will be denied.

## II. FAILURE TO JOIN AN INDISPENSABLE PARTY.

Defendant contends that this action should be dismissed pursuant to Federal

---

**10.** *See, e. g., Ocean Accident & Guaranty Corporation v. Southwestern Bell Telephone Company,* 100 F.2d 441 (8th Cir. 1939); *Lain v. Metropolitan Life Insurance Company,* 388 Ill. 576, 58 N.E.2d 587 (1945); *Ginsburg v. Bull Dog Auto Fire Insurance Association,* 328 Ill. 571, 160 N.E. 145 (1928); *Georgia Co-Operative Fire Association v. Borchardt & Company, supra*; 3 *Williston on Contracts* § 422; 4 *Corbin on Contracts* § 873; 5A *Appleman, Insurance Law and Practice* § 3458. *Cf. Alkan v. New Hampshire Insurance Company,* 53 Wis. 136, 10 N.W. 91 (1881) and *Spare v. Home Mutual Insurance Company,* 17 F. 568 (D.Or.1883) (provision in insurance policy prohibiting assignment *after* loss held void).

**11.** Defendant has raised the question of whether Delaware law applies here. I conclude that Delaware law does apply. The Court must look to the conflict laws of the forum state, Delaware, to determine which law to apply in interpreting the contract. Delaware courts look to the law of the place where the contract was executed to ascertain the construction and the validity of the contract. *Oliver B. Cannon & Sons, Inc. v. Dorr-Oliver, Inc.,* 312 A.2d 322 (Super.Ct.Del.1973). See also Delaware Study Comment to 6 Del.C. § 1–105(1) at p. 7. It is unclear on the record before me where the insurance contract was executed. If executed in Delaware, then under the Delaware conflicts law, Delaware's substantive law of contracts would apply. It is possible, however, that the contract was executed in Connecticut in view of the fact that defendant's principal place of business is in Connecticut (see ¶ 3 of the complaint). In that event, however, the Delaware courts would apply the whole law of Connecticut, including its conflict law, which holds that if a contract has its operative effect somewhere other than the place of the contract's execution then the law of the state of the operative effect of the contract applies. *Breen v. Aetna Casualty & Surety Company,* 153 Conn. 633, 220 A.2d 254 (1966). Here, Delaware is the state where the insurance contract is to have its operative effect in view of the fact that the business whose employees were the subject of the insurance is located in Delaware. Consequently, even if the insurance contract were executed in Connecticut, Delaware would apply the law of Delaware in construing the contract in question and passing on its validity. See *Oliver B. Cannon & Sons, Inc. v. Dorr-Oliver, Inc., supra,* where the court looked to the whole law of Connecticut in determining which state's substantive law of contracts should apply.

Rule of Civil Procedure 19 for failure to join Charles Crompton, Jr., court appointed receiver of Blue Hen Properties and Blue Hen Finance Company as a party.[12] Defendant argues that neither Properties nor its receiver was served and that in any case Properties has improperly been designated as "involuntary plaintiff" in this suit.

The record reflects that Joseph Gutowski, President and Manager of Blue Hen Properties, was served on the afternoon of April 21, 1975. Shortly after suit was filed Charles Crompton, Jr. was appointed receiver for Properties by the Delaware Court of Chancery for New Castle County.[13] Mr. Crompton has not been served.

 It is true that upon motion, the Court could direct that the receiver as successor in interest to Properties be substituted in this action or joined with Properties pursuant to Federal Rule of Civil Procedure 25(c). But substitution is not mandatory under that Rule. 7A *Wright & Miller, Federal Practice & Procedure* § 1958; *Sun-Maid Raisin Growers of California v. California Packing Corporation*, 273 F.2d 282 (9th Cir. 1959); *Virginia Land Company v. Miami Shipbuilding Corporation*, 201 F.2d 506 (5th Cir. 1953); *McComb v. Row River Lumber Company*, 177 F.2d 129 (9th Cir. 1949). Also see 3B *Moore's Federal Practice* ¶ 25.08. And in the absence of a motion for substitution and an order of the Court, the action will be continued in the name of the original party to the suit, the successor in interest being bound by any judgment resulting from the litigation. 7A *Wright & Miller, Federal Practice & Procedure* § 1958; *Hilbrands v. Far East Trading Company, Inc.*, 509 F.2d 1321 (9th Cir. 1975). Failure to serve Properties' court-appointed receiver is not grounds for dismissal of this action.[14]

 As noted above defendant also contends that Properties has been improperly designated as an "involuntary plaintiff" pursuant to Rule 19(a).[15] An involuntary plaintiff is a party who is obligated to assist in prosecuting an action or to permit its name to be used but refuses to do so and who is thereafter joined, without service, and bound by any judgment the Court may enter as to it. See 7 *Wright & Miller, Federal Practice & Procedure* § 1606; *Independent Wireless Company v. Radio Corp. of America*, 269 U.S. 459, 46 S.Ct. 166, 70 L.Ed. 357 (1926). Because of the harshness of subjecting a party who has not been served to the judgment of the Court, the rules provide that a party may only be joined as an "involuntary plaintiff in the 'proper case.' " 7 *Wright & Miller, Federal Practice & Procedure* § 1606. The "proper case", as described by the Supreme Court in *Independent Wireless Company v. Radio Corp. of America, supra*, occurs where the party has an obligation to permit its name and title to be used to protect the rights asserted in the action, where that party is not subject to the jurisdiction of the Court,

---

**12.** Plaintiff has not contested either in its brief or in oral argument to the Court defendant's contention that Properties is in fact an indispensable party to this litigation. For the purposes of defendant's motion, then, I will assume that Properties is indispensable under the terms of F.R.C.P. 19.

**13.** See p. 6 of defendant's brief in support of its motion to dismiss.

**14.** Nor is this an instance where the suit should be dismissed as to Properties because in fact Properties' receiver is the real party in interest. The receiver was not appointed until after suit was instituted. Only if transfer of an interest occurs prior to the institution of suit would the real party in interest provision of Rule 17 control. Where that transfer occurs after institution of suit, Rule 25(c) is the controlling rule of civil procedure. 7A *Wright & Miller, Federal Practice & Procedure* § 1958 at p. 663; 3B *Moore's Federal Practice*, ¶ 25.08 at p. 321. See also *Hilbrands v. Far East Trading Company, supra*.

**15.** Rule 19(a) provides that persons subject to service of process and whose joinder will not deprive the Court of jurisdiction over the subject matter of the action shall be joined as parties if their presence in the action is necessary for a just adjudication of the matter before the Court. Rule 19(a) further provides that if the party has not been joined the Court shall order that he be made a party to the action and that "[i]f he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff."

and where the party has been requested to join the suit voluntarily but refuses to do so.[16]

█ If a party is subject to service, however, it is not joined as an "involuntary plaintiff". Rather, it is served, joined as a defendant, and then realigned by the Court in the "character which [it] should assume". *Independent Wireless Company v. Radio Corp. of America*, 269 U.S. 459 at 468, 46 S.Ct. 166 (1926). See also 7 *Wright & Miller, Federal Practice & Procedure* § 1606; *Blacks v. Moseley Machinery Company, Inc.*, 57 F.R.D. 503 (E.D.Pa.1972).

█ This latter procedure was followed here. IRC requested that Properties join the suit,[17] and when that did not occur, IRC served Properties and joined it as a party. By denominating Properties as "involuntary plaintiff" IRC did not actually invoke the measure of last resort of subjecting Properties, without service, to the binding judgment of the Court, It simply realigned Properties, after service of process, in its proper party character. Although that may have been more properly the province of the Court, it is without question the course which this Court would have taken had Properties been involuntarily joined as a defendant. And since the Court would have realigned Properties as a plaintiff before making a determination as to whether diversity jurisdiction exists,[18] I see no harm in the Court's adopting IRC's realignment of Properties as a plaintiff in this suit.

## III. REAL PARTY IN INTEREST.

█ Finally defendant argues that Properties or its receiver, not IRC, is the real party in interest and that to protect defendant from unnecessary duplicative litigation, the Court should not permit IRC to prosecute this suit. I do not agree.

The real party in interest provision in the Rules was designed to alter the common law rule which required the assignee of a chose in action to sue for relief in the name of the assignor.[19] Under Rule 17(a) if a chose in action is assignable under the governing substantive law, then the assignee of that chose in action is a real party in interest and may sue for relief in the federal courts. 6 *Wright & Miller, Federal Practice & Procedure* ¶¶ 1543, 1544; 3A *Moore's Federal Practice* ¶ 17.09[1.–1].

I have heretofore held that Properties effected a valid assignment to IRC of an interest in its claim against Hartford. Accordingly, IRC is a real party in interest.

Defendant has cited to the Court the case of *Rissman v. Krenn & Dato Construction Company*, 22 Del.Ch. 309, 2 A.2d 128 (Del. 1938) as authority for its argument that IRC as an assignee of less than the entire right to the proceeds under the insurance

16. The *Independent Wireless* case was the first to announce the "involuntary plaintiff" principle. 7 *Wright & Miller, Federal Practice & Procedure* § 1606.

17. Defendant disputes that IRC did in fact request that Properties join the suit. IRC attached to its brief in opposition to the motion to dismiss, a letter dated February 26, 1975 from N. Richard Powers to Kenneth W. Lewis, attorney for Properties, requesting that Properties voluntarily join in the instant suit. Mr. Lewis responded in a letter dated March 3, 1975, that he would consult with his client and report to Powers concerning the joint cooperation of Properties and IRC in the suit. Properties did not subsequently join the suit on its own and I can only conclude from that that they refused to do so voluntarily.

18. Properties and IRC are both Delaware corporations. If Properties were joined as a defendant and not realigned, therefore, the requisite diversity of citizenship would not have existed for this Court to assume jurisdiction. But as noted in the *Blacks* case, the device of serving a party who in character would be a plaintiff and joining that party as a defendant "presumes the joined party will be realigned as a plaintiff in determining whether diversity exists." 57 F.R.D. 503 at 505.

19. See 3A *Moore's Federal Practice* ¶¶ 17.08 and 17.09[1.–1]. At common law the assignee of a chose in action, because he did not own legal title to the right, could not sue in law in his own name, but had to sue in the name of the assignor. In equity, however, the assignee, as beneficial owner of the rights in the chose in action, was permitted to sue in his own name joining if necessary, the assignor, the owner of the legal right. 3A *Moore's Federal Practice* ¶ 17.08.

policy, cannot bring suit in its own name and, therefore, is not a real party in interest. I believe defendant misreads this case. The case does not hold that under Delaware law a partial assignee has no substantive rights. It simply holds that a suit by a partial assignee on his chose in action may not be entertained in a law court but must be brought in equity.[20]

Whether an assignee may sue at law or must sue instead in equity, however, does not effect the determination of whether that party is a real party in interest under F.R.C.P. 17(a). Regardless of the manner in which that party would have to enforce his rights in state courts, he still has rights which are enforceable under substantive state law. As such he is a real party in interest under Rule 17(a).

The determination that IRC is a real party in interest under Rule 17(a), of course, does not dispose of the question of whether all necessary parties to the litigation have been joined. 6 *Wright & Miller, Federal Practice & Procedure* § 1543. In view of my finding above, however, that Properties has been properly joined in this suit and that Properties' receiver will be bound by any judgment the Court makes in this action, it is clear that all necessary parties to the litigation have been joined and that defendant will not be subjected to duplicative litigation of its obligations under the insurance policy.

Defendant's motion to dismiss because an indispensable party has not been joined and because suit has not been brought by a real party in interest is denied. Summary judgment will not be granted on defendant's contentions that there was no effective assignment from Properties to IRC.

---

**20.** As *Corbin* explains (see § 889 of 4 *Corbin on Contracts*), even after the courts recognized an assignee's right to proceed in his own name against the obligor, special problems still remained with respect to a partial assignment. This was because the partial assignment of rights in a chose in action left several parties with sufficient substantive rights in the chose in action to constitute them both real parties in interest. Unless a court had the power to join all interested parties, a debtor would be subjected to numerous and duplicative suits. For this reason, many courts adopted the principal announced in Section 156 of the *Restatement of Contracts*:

> An assignment of either a fractional part of a single and entire right against an obligor, or

of a stated amount from such a right, is operative as to that part or amount to the same extent and in the same manner as if the part had been a separate right, subject to the limitation that if the obligor has not contracted to make such a partial performance no legal proceeding can be maintained by such an assignee against the obligor over his objection, unless all persons having collectively a right to the entire performance are joined in the proceeding.

Delaware, however, in the *Rissman* case rejected the formulation of the *Restatement* and required instead that the suit by the partial assignee be brought in equity where the equity court could join all necessary parties to the litigation. 2 A.2d at 130.