**WEYERHAEUSER MORTGAGE COMPANY, Plaintiff-Appellant,**

**v.**

**EQUITABLE GENERAL INSURANCE COMPANY, (formerly known as Houston General Insurance Company), and Glenarm Place Apartments, Ltd., a Colorado limited partnership, Defendants-Appellees,**

**and**

**Glenarm Place Apartments, Ltd., Defendants.**

**No. 81CA0597.**

Colorado Court of Appeals, Div. III.

Dec. 29, 1983.

As Modified on Denial of Rehearing Feb. 9, 1984.
Certiorari Denied Aug. 27, 1984.

Hart & Trinen, Donald T. Trinen, Stephanie M. Smith, Denver, for plaintiff-appellant.

Weller, Friedrich, Hickisch, Hazlitt & Ward, John R. Hickisch, Edgar L. Neel, Denver, for defendants-appellees.

STERNBERG, Judge.

Plaintiff, Weyerhaeuser Mortgage Company, appeals the judgment dismissing an action to recover payments on a performance bond from defendants, Equitable General Insurance Company and Glenarm Place Apartments. We reverse.

Weyerhaeuser was the mortgage lender of approximately $640,000 on a federally sponsored and insured rehabilitation project designed to provide low income housing and to assist minority contractors. Emil Manzanares, the owner and president of Manzanares Construction Company, formed Glenarm Place Apartments, Ltd., a limited partnership, in order to participate in the federal program.

Glenarm applied to the Federal Housing Administration for sponsorship of a project to rehabilitate a 57-unit apartment building and to Weyerhaeuser for financing. The FHA approved the project and Weyerhaeuser agreed to make the loan. Regulations required that the project contractor, Glenarm, post a payment bond, which insures the payment of subcontractors, and a performance bond, which insures all of the contractor's obligations. Equitable, then known as Houston General Insurance Company, and Manzanares Construction Company, the general contractor, executed payment and performance bonds in the amount of $50,000 each. Glenarm was the obligee on the payment bond for the use and benefit of materialmen claimants, and Glenarm and Weyerhaeuser were co-obligees on the performance bond.

Glenarm acquired a building and remodeling began. The Weyerhaeuser loan was distributed in periodic payments to Glenarm and Manzanares. The loan was secured by a first deed of trust on the property. The project was completed approximately six months late, and the cost exceeded the contract price by more than $200,000. One of the unpaid materialmen brought an action in March 1974 to foreclose on a mechanic's lien on the property. Other subcontractors, Weyerhaeuser, and Manzanares were joined in the action. Weyerhaeuser then filed a third-party complaint against Equitable on both the payment and performance bonds.

In December 1975, the court ruled that subcontractor claims worth approximately $62,000 were superior to Weyerhaeuser's deed of trust, and the property was subsequently sold to satisfy these claims. Prior to the sale, Weyerhaeuser paid off the lienors and took assignments of their claims. At the time of the sale, Equitable had paid $33,000 on the payment bond and nothing on the performance bond.

In February 1976, Weyerhaeuser filed an amended third-party claim against Equitable on the payment bond for $17,000 (Case No. 1). In March 1976, Weyerhaeuser filed an action against Equitable and Glenarm to recover $50,000 on the performance bond, and claim for damages against Equitable, alleging bad faith in failing to settle with its insured (Case No. 2).

Glenarm, as co-obligee on the performance bond, was required to be a party to Case No. 2, but when it refused to become a plaintiff, Weyerhaeuser named it a defendant. (Glenarm had executed a guarantee with Equitable, promising to pay it for whatever it had to pay on the bond).

In October 1977, Equitable moved to consolidate the two cases, the motion was granted, and a jury trial was set in the consolidated cases for March 30, 1981. On the morning of trial, Equitable made an oral motion to dismiss Case No. 2, asserting as grounds misjoinder of parties and improper splitting of a cause of action. The motion was granted over Weyerhaeuser's objection. Weyerhaeuser was granted a stay of the trial on Case No. 1 pending this appeal.

I.

We first consider Weyerhaeuser's contention that its complaint should not have been dismissed on the basis of mis-

joinder of parties where the co-obligee was present in the case as a defendant. Equitable argued that Glenarm, which had refused to join the action as a plaintiff, should have been joined as an involuntary plaintiff, not a defendant. We agree that dismissal on this basis was improper.

"Misjoinder of parties is not ground for dismissal of an action." C.R.C.P. 21. C.R. C.P. 19(a) provides that if feasible, a party necessary for a just adjudication shall be joined, and provides that: "If [the party] should join as a plaintiff but refuses to do so [it] may be made a *defendant, or in the proper case, an involuntary plaintiff.*" (emphasis added)

However, making a person an involuntary plaintiff is proper only in limited circumstances.

"[T]he involuntary plaintiff procedure allows a person to be made party to the action without service of process and permits the court to enter a judgment that has res judicata effect as to him. There is no justification for resorting to it when the party actually is subject to the jurisdiction of the court."

7 *C. Wright & A. Miller, Federal Practice & Procedure* § 1606 at 52 (1972). "A party may be made an involuntary plaintiff *only* if he is *beyond the jurisdiction of the court,* and is notified of the action, but refuses to join.... If he is within the jurisdiction, he *must be* served with process and *made a defendant." C. Wright & A. Miller, supra,* at 51 (emphasis added). *See Independent Wireless Telegraph Co. v. Radio Corp. of America,* 269 U.S. 459, 46 S.Ct. 166, 70 L.Ed. 357 (1926).

Glenarm was within the jurisdiction of the court, and Weyerhaeuser properly made it a defendant. Moreover, once Glenarm had been made a party, the court could have realigned it to its proper position. *See International Rediscount Corp. v. Hartford Accident & Indemnity Co.,* 425 F.Supp. 669 (D.C.Del.1977). In fact, Weyerhaeuser suggested during argument on Equitable's motion to dismiss that Glenarm be made a plaintiff if the court thought it proper. "[T]he philosophy of present Rule 19 is to avoid dismissal whenever possible...." *Heath v. Aspen Skiing Corp.,* 325 F.Supp. 223 (D.Colo.1971); *Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distributors Pty., Ltd.,* 647 F.2d 200 (D.C.Cir.1981).

## II.

■ Weyerhaeuser next asserts that its complaint did not constitute an impermissible splitting of a cause of action and that even if it did, the trial court erred in dismissing Case No. 2. We agree.

It is Weyerhaeuser's contention that the performance and payment bonds are separate contracts with different beneficiaries, obligations, and rights. Weyerhaeuser also notes Case No. 2 contained a separate tort claim of bad faith which arose after the breach of the bonds.

Equitable argues that both causes of action are based upon the alleged breach of the construction contract by the contractor, and that each suit is based on the same claim: reimbursement of mechanic's lien claims. If Equitable is correct, then the proper course for it to have taken would have been to move to consolidate Cases No. 1 and 2 into a single cause of action pursuant to C.R.C.P. 42(a), which provides:

"When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay."

Equitable is correct in noting the undesirability of splitting a common question of law or fact into separate causes or trials, which results in unnecessary cost or delay. Here, however, the actions had already been consolidated for trial on Equitable's motion. Equitable then waited until the morning of the scheduled trial before complaining further about a "split," and then, rather than moving to consolidate the two cases into one, moved instead for a dismissal of Case No. 2.

As a result of the dismissal, a stay was granted on the resolution of Case No. 1, and this appeal was filed. This resulted in more unnecessary cost and delay than if the two causes had proceeded to trial on March 30, 1981. Equitable cites no authority for the proposition that dismissal was justified in this instance, and while making a general allegation that it was prejudiced by this "splitting," demonstrates none.

The judgment is reversed and the cause is remanded for trial.

TURSI and BABCOCK, JJ., concur.