J-A06042-18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MATTHEW T. DEIVERT, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| PITTSBURGH CHAUFFEUR, LLC, | : | |
| | : | |
| Appellant | : | No. 1314 WDA 2017 |

Appeal from the Judgment Entered September 1, 2017
in the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD No 15-019904

BEFORE: BENDER, P.J.E., SHOGAN, and STRASSBURGER, JJ.*

MEMORANDUM BY STRASSBURGER, J.: **FILED April 2, 2018**

Pittsburgh Chauffeur, LLC, appeals from the judgment entered against it on September 1, 2017, after a jury awarded Matthew T. Deivert $500,000 for injuries sustained during a limousine ride provided by Pittsburgh Chauffer. We affirm.

The facts of this case are summarized in the trial court opinion authored by the Honorable Alan J. Hertzberg, and filed on October 27, 2017; thus, we need not recite them in full here. *See* Trial Court Opinion, 10/27/2017, at 1-4. Briefly, on February 1, 2014, Deivert was invited by a friend to celebrate her birthday, which involved riding between bars and night clubs in vehicles owned by Pittsburgh Chauffeur. Around 2:00 a.m. on February 2, Deivert and approximately 19 others "cramm[ed] into the limousine" meant to fit 10 people. *Id*. at 2. During the ride, Deivert felt intense pain near his knee, and

---

*Retired Senior Judge assigned to the Superior Court.

when he got out of the limousine, he saw a burn on his leg.  Eventually, Deivert was referred to a burn specialist, who diagnosed Deivert with having sustained a third-degree burn.  Deivert had two surgical grafts performed and was left with two large, permanent scars on his thigh and knee.

On November 9, 2015, Deivert filed a complaint against Pittsburgh Chauffeur alleging it was negligent in providing too small of a limousine to accommodate the number of passengers that night.  Deivert alleged that the proximate cause of his third-degree burn was due to riding in that limousine.

A jury trial was held from May 9 to May 11, 2017.  Prior to trial, Pittsburgh Chauffeur presented a motion *in limine* to exclude testimony of Deivert's medical and causation expert, Dr. Gregory Habib.  The trial court denied that motion.  The jury trial commenced, and on May 11, 2017, the jury returned a verdict in favor of Deivert and against Pittsburgh Chauffeur for $500,000.  Pittsburgh Chauffeur filed post-trial motions, which were denied on August 7, 2017.  Pittsburgh Chauffeur filed a timely notice of appeal, and both Pittsburgh Chauffeur and the trial court complied with Pa.R.A.P. 1925.

On appeal, Pittsburgh Chauffeur sets forth the following six questions for our review.

> 1.  Whether the court abused his discretion or committed an error of law in denying the motion *in limine* to exclude testimony of [Deivert's] medical expert when Dr. Habib could not support his methodology opinion with medical literature, studies or testing and when his testimony lacked foundation to support his opinion that an injury of this severity could ever be caused in the manner as alleged.

2.     Whether the court committed an error of law in denying the motion for post-trial relief and/or the motion for judgment notwithstanding the verdict when the verdict was against the weight of the evidence and when [Deivert] lacked competent evidence in the form of medical testimony or otherwise show that an overloaded or overcrowded limousine could result in a full thickness third[-]degree burn caused by one person's leg rubbing against another under the circumstances presented or under any circumstances.

3.     Whether the court abused its discretion or committed an error of law in denying the motion for post-trial relief when the court permitted [Deivert's] medical expert, Dr. Habib, to give testimony in the form of argument; to assign an unfair burden of proof upon [Pittsburgh Chauffeur]; and to testify that [Pittsburgh Chauffeur's] expert testimony was defective for failing to provide an alternate theory of causation.

4.     Whether the court abused its discretion or committed an error of law in denying the motion for post-trial relief when the court refused proposed points for charge regarding the mere happening of an accident; the mere fact of damages and speculation not being a basis for any award.

5.     Whether the court abused its discretion or committed an error of law in denying the motion for post trial relief when the court re-drafted the jury verdict slip to have the jury question on negligence refer to the standard of care – "highest duty of care," as opposed to whether or not Pittsburgh Chauffeur was negligent.

6.     Whether the court abused its discretion or committed an error of law in denying the motion for remittitur.

Pittsburgh Chauffeur's Brief at 3-5 (unnecessary capitalization omitted).

Following a review of the certified record and the briefs for the parties, we conclude that the opinion of the Honorable Alan Hertzberg thoroughly addresses Pittsburgh Chauffeur's issues and arguments and applies the correct law to facts that are supported by the record. We discern no error or abuse of discretion. Therefore, we adopt the trial court's opinion of October

- 3 -

27, 2017 as our own and affirm Deivert's judgment based upon the reasons stated therein.[1] *See* Trial Court Opinion, 10/27/2017, at 4-8 (explaining that it did not err or abuse its discretion in denying Pittsburgh Chauffeur's motion *in limine* seeking to exclude Dr. Habib's testimony where Dr. Habib did not employ a novel methodology, and Dr. Habib did not need to support his expert medical opinion with literature or studies); *id*. at 6-9 (concluding that it did not err by not granting judgment notwithstanding the verdict or by not awarding a new trial with respect to purported inaccuracies in Dr. Habib's testimony);[2] *id*. at 9-11 (concluding that there was no error in the jury charge

---

[1] The parties shall attach a copy of the trial court's October 27, 2017 opinion to this memorandum in the event of further proceedings.

[2] Pittsburgh Chauffeur also claims that the verdict was against the weight of the evidence. *See* Pittsburgh Chauffeur's Brief at 33-42 (arguing the testimony of "Deivert and his two friends was grossly incompetent," and that the "expert testimony by Dr. Habib … does not support a conclusion that an overloaded or overcrowded limousine could result in" the injury Deivert sustained).

> A motion for a new trial alleging that the verdict was against the weight of the evidence is addressed to the discretion of the trial court. An appellate court, therefore, reviews the exercise of discretion, not the underlying question whether the verdict is against the weight of the evidence. The factfinder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. The trial court will award a new trial only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion. Thus, the trial court's denial of a motion for a new

- 4 -

where Pittsburgh Chauffeur's proposed points for charge were repetitious); *id*. at 11-12 (concluding that it did not abuse its discretion in fashioning the verdict slip in a way it believed would not confuse the jurors); *id*. at 12-15 (concluding that it did not abuse its discretion in failing to grant remittitur where Deivert suffered a third-degree burn, which is a severe injury leaving a permanent scar).

Judgment affirmed.

PJE Bender joins the memorandum.

Judge Shogan files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/2/2018

---

trial based on a weight of the evidence claim is the least assailable of its rulings.

*Commonwealth v. Cousar*, 928 A.2d 1025, 1035-36 (Pa. 2007).

Here, we recognize that the trial court did not explicitly address a weight-of-the-evidence claim in its opinion. However, based upon its conclusions regarding Dr. Habib's testimony on pages 4 through 9 of the opinion, as well as its overall analysis, it is evident that it concluded that the verdict was not so contrary to the evidence that it shocked the trial court's conscience. Accordingly, we conclude that there was no abuse of discretion in this regard, and Pittsburgh Chauffeur is not entitled to a new trial on this basis.

H0604a-18
Circulated 03/07/2018 02:39 PM

# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
## CIVIL DIVISION

MATTHEW DEIVERT,

    Plaintiff,

    vs.

PITTSBURGH CHAUFFEUR, LLC,

    Defendant.

CASE NO. GD 15-19904

Superior Court docket no.
1314 WDA 2017

## OPINION

JUDGE ALAN HERTZBERG

COPIES SENT TO:

COUNSEL FOR PLAINTIFF:

RICHARD TALARICO, ESQUIRE
2945 BANKSVILLE ROAD – SUITE 200
PITTSBURGH, PA 15216

COUNSEL FOR DEFENDANT:

KATHLEEN MCALLLISTER, ESQUIRE
20 STANWIX STREET – 11TH FLOOR
PITTSBURGH, PA 15222

MATTHEW DEIVERT,

    Plaintiff,

                      CASE NO. GD 15-19904

    vs.

                      Superior Court docket no.

PITTSBURGH CHAUFFEUR, LLC,    1314 WDA 2017

    Defendant.

## OPINION

Alan Hertzberg, Judge                Date Filed: October 26, 2017

### I.   Background

Plaintiff Matthew Deivert, age 25, was invited to celebrate the birthday of a friend named Chelsy during the evening of February 1, 2014. Mr. Deivert took a taxi to get to Chelsy's home located in the Southside Slopes neighborhood of Pittsburgh. A group of between thirty and forty people, which included friends Mr. Deivert knew from attending Allegheny College, began the celebration by socializing and drinking alcoholic beverages at Chelsy's home. Then, the birthday celebration moved via a party bus provided by Defendant Pittsburgh Chauffeur, LLC to a dance club in Pittsburgh's Strip District called Cavo Nightclub.

Mr. Deivert and the others danced, socialized and consumed alcoholic beverages until Cavo Nightclub closed at 2:00 a.m. For the trip back to Chelsy's home, Pittsburgh Chauffer provided a limousine designed to accommodate ten passengers. Mr. Deivert was one of the first passengers to get inside the limousine and take a seat. It was cold

and back to Chelsy's home as quickly as possible. This resulted in approximately twenty people rapidly cramming into the limousine in a situation that Mr. Deivert later described as "sardines in a can fitting any way we could." Transcript of Jury Trial, Date: May 9, 10, 11, 2017 ("T." hereafter), p. 111.

At a speed of approximately fifteen miles an hour, the limousine ride lasted for twenty to twenty-five minutes, with it "bottoming out" when going around some corners. Mr. Deivert's right knee was driven against the knee of the man next to him with such force that it became painful. Of course, he attempted to extricate his leg, but people were so tightly squeezed together that his knee remained wedged in place. Although Mr. Deivert played small college and semi-professional football, his size, five feet five inches tall and less than one hundred fifty pounds, is atypical for a football player and he did not appear to be unusually strong. He pleaded with people to please move, but they were unable to do so. He screamed because the pain on the side of his knee was increasing as he squirmed to try to remove his knee from the vice-like situation. He screamed to the driver to stop the limousine and let him out (T., p. 80), but this did not happen. Mr. Deivert was finally able to "break free" about one or two minutes before the vehicle reached its destination.

Immediately after Mr. Deivert got out of the limousine, with both men and women present, he pulled his pants down to look at the side of his right knee. Mr. Deivert and the other passengers saw a "softball size red mark" that "looked kind of like a brush burn" with the top layer of skin removed. T, pp. 81-82. Apparently it was a gruesome sight as "[a] couple of people were like, whoa, what is that, then turned around

2

cell phone and sent the photograph by text message to some of his friends who had been in the limousine.

The wound did not improve, and on February 6 Mr. Deivert went to a UPMC Walk-In Clinic. A physician there examined the wound and directed Mr. Deivert to go to the emergency room at Mercy Hospital. From Mercy Hospital's emergency room Mr. Deivert was transferred to the burn unit. The physicians there first attempted to heal the wound by applying creams and wrapping it, but the technique was unsuccessful. Instead, Mr. Deivert had a surgical procedure later in February involving the placement of cadaver skin over the wound. In March Mr. Deivert had a second surgical procedure. The physicians harvested skin from Mr. Deivert's right thigh and grafted it to the wound. While the skin graft eventually healed the wound, Mr. Deivert was left with two large, permanent scars on his right leg. One scar is located on the outside of his knee and the other scar is located on his thigh where the skin was harvested from his thigh.

Mr. Deivert commenced this litigation in November of 2015 by filing a complaint averring negligence by Pittsburgh Chauffeur. The depositions of nine of the other passengers were taken during the discovery process, but all provided testimony consistent with Mr. Deivert's description of the limousine ride. The dispute was assigned to me for resolution by way of a jury trial.

Preliminarily, counsel argued motions *in limine* to obtain rulings on evidentiary issues expected to arise during the trial. Pittsburgh Chauffeur submitted a motion *in limine* to exclude the causation testimony of physician Gregory Habib, because he allegedly utilized novel science that is not generally accepted among physicians. See

3

Frye v. United States, 293 F. 2d 1013 (D.C. Cir. 1923) (adopted first in Pennsylvania in Commonwealth v. Topa, 471 Pa. 223, 369 A.2d 1277 (1977) and then in Pennsylvania Rule of Evidence no. 702(c)). After hearing argument from counsel, I denied the motion and allowed the Jury to view Dr. Habib's videotaped deposition. The Jury also received live testimony from Mr. Deivert, two of his friends, the limousine driver, the owners of Pittsburgh Chauffeur, as well as the videotaped deposition of its physician expert witness, Dr. James Cosgrove. Pittsburgh Chauffeur's defense was that the injury resulted from some unidentified cause other than its overcrowded limousine. Rejecting this defense, the Jury reached a unanimous verdict in favor of Mr. Deivert in the amount of $500,000.

Pittsburgh Chauffeur appealed from the judgment entered on the verdict, and I write this Opinion to explain the rulings identified in its Concise Statement of Errors Complained of on Appeal ("Concise Statement" hereafter). See Pennsylvania Rule of Appellate Procedure No. 1925(a). Most of Pittsburgh Chauffeur's complaints concern my rulings on Dr. Habib's videotaped deposition. See Concise Statement, ¶ nos. 1, 2, 3, 4 and 5.

## II.    Plaintiff's Expert Testimony

Pittsburgh Chauffeur first contends I erroneously denied its motion *in limine*. It argues Dr. Habib's opinion on causation is inadmissible pursuant to Frye v. United States, because he relies on novel science that is not generally accepted among physicians. However, Pittsburgh Chauffeur incorrectly interprets Frye. The Pennsylvania Supreme Court has emphasized that valid challenges under Frye must be made to a novel methodology and not to an expert's conclusions, which need not be generally accepted by the relevant scientific community. See Commonwealth v. Puksar,

4

Pa. 54, 890 A.2d 372 at 382 (2005). Dr. Habib's methodology was to take a history from Mr. Deivert, perform an examination of his injury, review photographs of the injury, review medical records and deposition transcripts, then provide an opinion on causation based on his education, training and experience. This methodology is by no means novel as it is the methodology almost universally employed by medical experts in personal injury cases. See Folger ex rel. Folger v. Dugan, 876 A.2d 1049 at 1058 (Pa. Super. 2005). Because it is Dr. Habib's conclusion and not his methodology that Pittsburgh Chauffeur alleges is novel, denial of its motion *in limine* was appropriate.

Assuming, for the sake of Pittsburgh Chauffeur's argument, that it may challenge Dr. Habib's conclusion by claiming it relies on novel science, Mr. Deivert proved pursuant to Frye that the conclusion is generally accepted by physicians. Dr. Habib testified to general acceptance by other physicians of his conclusion that the combination of pressure and friction caused the burn. See Videotaped Deposition of Gregory Habib, D.O. pp. 7-8, 12-15, 20, 38, 46-47 and 60-61. In addition, Pittsburgh Chauffeur's medical expert witness actually agreed with Dr. Habib that "pressure and friction [can] combine together to form a burn...." Videotape Deposition of James L. Cosgrove, M.D., p. 56. Therefore, since Dr. Habib's conclusion is generally accepted by other physicians, I correctly denied the motion in limine.

Pittsburgh Chauffeur next contends Dr. Habib "did not support his opinion with any medical literature or epidemiological studies." Concise Statement, ¶ no. 1. However, an expert medical witness may rely on experience and need not support his or her opinion with medical literature. See Catlin v. Hamburg, 56 A.3d 914 at 921 (Pa.

5

Dr. Habib to give his opinion.

Pittsburgh Chauffeur next contends Dr. Habib "falsely testified to a bony prominence when photographic evidence, medical records and a view of Plaintiff's leg located the injury on the thigh...." Concise Statement, ¶ no. 1. Ironically, Mr. Deivert's counsel argued to the Jury that Dr. Cosgrove (Pittsburgh Chaufffeur's medical expert) had inaccurately concluded the wound was to the thigh because he neither examined Mr. Deivert nor took a history from him. T., pp. 334-339. The Jury saw the photographic evidence and viewed Mr. Deivert's leg, and based on its verdict, the Jury likely agreed with Mr. Deivert's counsel. I also found Dr. Cosgrove's conclusion that the wound did not develop over a bony prominence was not credible. Hence, there was no false testimony by Dr. Habib. Instead, there was testimony by Dr. Cosgrove that lacked credibility. Thus, allowing Dr. Habib to testify that the wound developed over a bony prominence was proper.

Pittsburgh Chauffeur next contends Dr. Habib's testimony about necrotic tissue was contradictory and he was unable to quantify the amount of force necessary to cause the injury. See Concise Statement, ¶ no. 1. However, this is simply an argument that Dr. Habib was not credible, which Pittsburgh Chauffer's counsel made to the Jury. See T., pp. 314-317. Since this clearly does not make Dr. Habib's opinion or any other part of his testimony inadmissible, his opinion on the cause of Mr. Deivert's injury was properly admitted into evidence.

Pittsburgh Chauffeur next contends I should have granted judgment notwithstanding the verdict or a new trial because there was not competent evidence that

6

See Concise Statement, ¶ nos. 2 and 3. This argument is meritless. The testimony by Mr. Deivert and two of his friends who were in the limousine was competent evidence that the overcrowded limousine caused Mr. Deivert's injuries. In addition, the expert medical testimony from Dr. Habib was competent evidence that the overcrowded limousine caused Mr. Deivert's injuries. Finally, even though it was Dr. Cosgrove's opinion that the overcrowded limousine did not cause Mr. Deivert's injury, he acknowledged seeing pressure injuries develop over bony prominences, and he would not rule out the possibility that pressure and friction from the overcrowded limousine injured Mr. Deivert. See Deposition of Cosgrove, pp. 55-57. Therefore, I correctly denied the motions for judgment notwithstanding the verdict and for a new trial.

Pittsburgh Chauffeur next contends I should have granted judgment notwithstanding the verdict or a new trial because Dr. Habib's causation opinion was given "without medical or scientific support or foundation ...." Concise Statement, ¶ no. 4. However, as I previously explained, the methodology employed by Dr. Habib is standard for medical experts in personal injury cases, his conclusion that pressure and friction caused the wound is generally accepted by physicians and he is permitted to rely on his own education and experience for his opinion. Therefore, this contention lacks any merit.

Pittsburgh Chauffeur next contends I erroneously permitted Dr. Habib "to give testimony outside of the scope of his report." Concise Statement, ¶ no. 5. In the Brief in Support of Defendant's Post-Trial Motions, that testimony from Dr. Habib is described as criticism of Dr. Cosgrove, the force required to cause pressure sores and the way burns

7

progress. Pennsylvania Rule of Civil Procedure No. 4003.5(c) prohibits "direct testimony of the expert at trial ....beyond the fair scope of his or her" expert's report. With the purpose for this rule being avoidance of unfair surprise, the focus of the analysis is on the word "fair." See Mansour v. Linganna, 787 A.2d 443 (Pa. Super. 2001) *appeal denied* 796 A.2d 984, 568 Pa. 702. With respect to Dr. Habib's criticism of Dr. Cosgrove, one should not be surprised but instead should be expecting this. In any event, Dr. Cosgrove's testimony was equally critical of Dr. Habib. See Deposition of Cosgrove, pp. 24-25 and 45-46. As to force and pressure sores, pressure sores are mentioned in Dr. Habib's expert report. Additionally, most of the testimony on the amount of force was elicited during cross examination. With respect to the way burns progress, there was no surprise since Dr. Cosgrove testified extensively about the size of the wound. In addition, Dr. Habib was describing the photographs mentioned in his expert's report when he provided the testimony. Therefore, no direct testimony outside the "fair scope" of Dr. Habib's expert report was given.

Pittsburgh Chauffeur next contends I erroneously permitted Dr. Habib to give testimony in the form of argument and to comment on the credibility of other witnesses. See Concise Statement, ¶ no. 5. In the Brief in Support of Defendant's Post-Trial Motions, the argumentative testimony is described as Dr. Habib saying no cause of the injury was identified other than the overcrowded limousine. This testimony, however, is appropriate because it is a fact assumed by Dr. Habib in rendering his opinion. The comment on credibility is described as Dr. Habib saying he believed Mr. Deivert and his friends had given truthful deposition testimony about what occurred during the limousine ride. Again, these are facts that Dr. Habib properly could assume in rendering his

8

Mr. Deivert "has a case of what is called false attribution." Deposition of Cosgrove, p. 43. Therefore, this testimony by Dr. Habib was permissible.

Pittsburgh Chauffeur next contends that Dr. Habib's testimony about the overcrowded limousine being the only identified cause of injury assigned "an unfair burden of proof upon the Defendant." Concise Statement, ¶ no. 5. This contention lacks any merit because I instructed the Jury that "[t]he Plaintiff has the burden of proving ... the defendant's negligence was a factual cause in bringing about the harm." T., p. 345; Pennsylvania Suggested Jury Instruction (Civil) No. 5.00. Hence, an unfair burden of proof was not assigned.

Pittsburgh Chauffeur next contends I erroneously permitted Dr. Habib "to testify that Defendant's expert testimony was defective for failing to provide an alternative theory of causation." Concise Statement, ¶ no. 5. However, as pointed out above, Dr. Cosgrove is critical of Dr. Habib. He criticized Dr. Habib for not being a treating physician and having an inconceivable opinion on causation. See Deposition of Cosgrove, p. 24-25 and 45-46. Relative to causation, Dr. Cosgrove also testified Mr. Deivert falsely attributed the wound to the limousine ride. Since it would therefore be unfair to disallow criticism of Dr. Cosgrove's opinion on causation, I properly permitted the testimony from Dr. Habib.

III.  Jury Charge and Written Verdict Form

Pittsburgh Chauffer next takes issue with my instructions to the Jury on the applicable law. It contends "the Court abused its discretion and committed error in denying Defendant's Points for Charge ... regarding the mere happening of an accident,

9

the mere fact of damages and speculation not being a basis for any award." Concise Statement, ¶ no. 6. Instructions or the "charge" to the jury is adequate "unless there is an omission in the charge which amounts to a fundamental error." Quinby v. Plumsteadville Family Practice, Inc., 589 Pa. 183, 197, 907 A.2d 1061, 1069-1070 (2006). My denial of the charge, that the plaintiff has the burden to prove the defendant negligent by a preponderance of the evidence with the occurrence of an accident not being evidence of negligence, was not fundamental error. Such a charge would have been repetitious or the concept sufficiently covered by the charge I gave the Jury that defined preponderance of the evidence and instructed "[t]he Plaintiff has the burden of proving ... .[t]he Defendant was negligent ..." T., p. 345. Since Pittsburgh Chauffeur acknowledged the limousine was carrying more passengers than was appropriate (see T., pp. 282-285) and the dispute was focused on whether this caused Mr. Deivert's injury, the requested charge also could have misled the Jury from focusing on the main dispute.

I denied the charge, that sustaining damages by itself is not a reason to award damages, because it is highly repetitious. Before I instructed the Jury on damages I said, "[t]he fact that I am now going to instruct you about damages does not imply any opinion on my part as to whether damages should be awarded. If you find that the Defendant is liable to the Plaintiff you must then find an amount of money damages ..." T., p. 348. I also instructed the Jury that the Plaintiff has the burden to prove the extent of damages. See T., p. 345. In addition, the written verdict template I prepared required the Jury to find negligence and factual cause in order to award damages.

I denied the charge, that speculative expert testimony is to be disregarded, because it was repetitious or the concept sufficiently covered by another charge. I

10

instructed the Jury that the Plaintiff had the burden to prove negligence and factual cause and that "[a] factual cause cannot be an imaginary or fanciful factor having no connection or only an insignificant connection with the harm." T., p. 346. I also provided the Jury with extensive, suggested guidance on evaluating expert witness testimony. See T., pp. 354-356. Giving the instruction also could have misled the Jury to focus on whether one of the experts speculated when the real dispute between experts boiled down to which one was more credible. Finally, the Superior Court of Pennsylvania deemed a very similar charge unnecessary in Gillingham v. Consol Energy, Inc., 2012 PA Super 133, 51 A.3d 841 at 858 (2012).

Pittsburgh Chauffeur next contends I erroneously prepared a written verdict template (or verdict slip) that asked if Pittsburgh Chauffeur's conduct "fell below the highest standard of care?" instead of asking if Pittsburgh Chauffeur "was negligent." Concise Statement, ¶ no. 7. According to Pittsburgh Chauffeur, this confused and misled the Jury. Id. However, as I said on the record during the charging conference (see T., pp. 295-297), in this case asking if the defendant was negligent had the potential to confuse the Jury.

Even though Pittsburgh Chauffeur is a "common carrier," neither party submitted a proposed jury instruction on a common carrier's duty to passengers. See, e.g., Connolly v. Philadelphia Transp. Co., 420 Pa. 280, 283, 216 A.2d 60, 62 (1966) declaring "[a] common carrier ... owes its passengers the highest degree of care." Hence, Pittsburgh Chauffeur did not object when I proposed to give Pennsylvania Suggested Jury Instruction (Civil) no. 13.120 on a common carrier's duty of care. At the same time, Pittsburgh Chauffeur insisted that Mr. Deivert was negligent and that the verdict slip ask

11

if he was negligent. With a higher standard of care applicable to Pittsburgh Chauffeur than the ordinary negligence standard of care applicable to Mr. Deivert, using the same negligence standard for both parties could have confused the Jury. It is within my discretion to grant or refuse a proposed verdict slip. See Wiggins v. Synthes, 2011 PA Super 172, 29 A.3d 9 at 18. Therefore, I properly exercised my discretion by eliminating the potential for jury confusion with a verdict slip that asked if Pittsburgh Chauffeur's conduct fell below the highest standard of care.

## IV. Verdict Amount

Pittsburgh Chauffeur's final contentions relate to the amount of the verdict, $500,000. It first contends the verdict is excessive because there only were noneconomic damages. See Concise Statement, ¶ no. 8. However, to analyze an excessive verdict claim, one begins "with the premise that large verdicts are not necessarily excessive verdicts." Paliometros v. Loyola, 2007 PA Super 242, 932 A.2d 128, 135. A verdict is not to be deemed excessive because it does not include medical expenses, lost earnings or other similar expenses. Id. At 136 (1998 sexual assault resulted in $590,000 jury verdict involving only noneconomic damages) citing Botek v. Mine Safety Appliance Corp., 531 Pa. 160, 611 A.2d 1174 (1992) (1982 incident resulted in $350,000 jury verdict involving only $783 in economic losses). The factors relevant in determining whether the $500,000 verdict is excessive include the severity of the injury, whether it is manifested by objective physical evidence and whether it is permanent. Id. at 135.

Mr. Deivert's injury clearly is manifested by objective physical evidence and has left permanent scars. The injury is severe. It is a third degree burn. The Jury saw a progression of photographs of the wound and also viewed the actual scars from it while

12

Mr. Deivert testified during the trial. The injury appeared very ugly in its early stages. Both experts agree the injury was painful when it was sustained, the two surgeries were painful and recovery was painful. The severity of the injury also is apparent from the high degree of embarrassment and humiliation it has inflicted on Mr. Deivert. He is asked, "what happened to you?" when people at his gym notice the scar, and his level of frustration and embarrassment increases further when he tells them "an overcrowded limo." T., p. 95. When he goes to walk dogs at the dog park "[t]here will be people pointing. Kids go there. You know how honest kids are. They'll be like eww, eww, gross." T., p. 96. The injury also negatively impacts Mr. Deivert's romantic life. See T., p. 95. Pittsburgh Chauffeur disputed none of this, and I found Mr. Deivert and his two friends were extremely credible witnesses. The $500,000 verdict for Mr. Deivert's uncontroverted pain and suffering, embarrassment, humiliation, loss of enjoyment of life and disfigurement is not so "grossly excessive as to shock [my] sense of justice." See Paliometros v. Loyola at 134. Therefore, my decision to let the Jury's decision stand was correct.

Pittsburgh Chauffeur next contends "[t]he Jury's questions revealed confusion and misunderstanding as to their determination of damages." Concise Statement, ¶ no. 8. This alleged confusion, according to Pittsburgh Chauffeur, resulted when Mr. Deivert's failure to offer his medical expenses into evidence[1] left the Jury "with nothing to fairly gauge the value of the case...." Brief in Support of Defendant's Pot-Trial Motions, p. 35. The written questions the Jury submitted to me during deliberations were:

---

[1] Mr. Deivert's counsel announced the decision not to offer medical bills into evidence during an on the record discussion about Pittsburgh Chauffeur's "Motion in Limine Re: Insurance Benefits and Medical Expenses." Pittsburgh Chauffeur had argued that evidence the lien for medical expenses would be satisfied from any recovery would be prejudicial. As would be expected, Pittsburgh Chauffeur had no objection to Mr. Deivert's medical bills not being offered into evidence. See T., pp. 14-15.

1. "Can we get the total amount of medical expenses because of the injury?" T., p. 365.

2. "We are having trouble determining an amount for an award of damages. Is there any evidence we can review that would assist with that or can the Judge clarify how we decide?" T., p. 369.

3. "Is the amount we write down going to be the final amount awarded?" T., p. 373.

I do not interpret these questions as an indication of "confusion" or "misunderstanding," and those terms or similar terms are not contained in any of the questions. The questions certainly indicate the Jury was struggling to determine the appropriate amount of compensation. The amount of medical expenses, however, have no relevance to the degree and extent of a person's pain and suffering or other noneconomic losses. See Martin v. Soblotney, 502 Pa. 418, 466 A.2d 1022(1983). In addition, long-standing Pennsylvania jurisprudence prohibits attorneys from suggesting the amount of an award for noneconomic damages. Hence, this Jury, similar to many Pennsylvania juries, expressed the difficulty inherent when intangible losses must be quantified without the use of any mathematical formula. The verdict, therefore, did not result from confusion, and the questions submitted by the Jury reflect the difficulty inherent in determining noneconomic damages[2].

Lastly, Pittsburgh Chauffeur contends the verdict "represents a value guided only by emotion, sympathy for the Plaintiff or speculation." Concise Statement, ¶ no. 9. Pittsburgh Chauffeur, however, offers no direct evidence that emotion, sympathy or

---

[2] Counsel for Pittsburgh Chauffeur agreed that the answers to each question that I provided to the Jury were appropriate. See T., pp. 365-377.

14

prejudice should influence your deliberations." T., p. 362. Pittsburgh Chauffeur seems to argue the influence of emotion, sympathy or speculation in the $500,000 Verdict can be inferred because of the allegedly insignificant damages. I disagree because the damages to Mr. Deivert were significant and the Verdict therefore not the product of emotion, sympathy or speculation.

BY THE COURT:

_____,J.

15